Michael G. Long, *pro hac vice*
Allen S. Kinzer, *pro hac vice*
Michael C. Griffaton, *pro hac vice*
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
(614) 464-6297

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FREDDA MALENA, on behalf of herself and
all others similarly situated,

                          Plaintiff,

                                                                    09 Civ. 5849 (WHP)

              -against-

VICTORIA'S SECRET DIRECT, LLC, VICTORIA'S
SECRET DIRECT NEW YORK, LLC, VICTORIA'S
SECRET DIRECT MEDIA, INC., VICTORIA'S
SECRET STORES, LLC, VICTORIA'S SECRET
STORES BRAND MANAGEMENT, INC., LIMITED
BRANDS, INC., LIMITED BRANDS DIRECT
MEDIA PRODUCTION, INC. and ANN O'MALLEY,

                          Defendants.
-------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY CERTIFICATION AS AN FLSA COLLECTIVE ACTION

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................1

STATEMENT OF FACTS .......................................................................................2

    I.    Executive Assistants' Job Duties and Responsibilities...........................2

          A.    Executive Assistants are paid on a salaried basis .......................2

          B.    Executive Assistants' primary duties and responsibilities are directly related to management or general business operations and involve the exercise of discretion and independent judgment over matters of significance ..............................................................3

          C.    Fredda Malena's employment as an Executive Assistant............6

          D.    Defendants' determined that Executive Assistants are properly classified as exempt pursuant to the FLSA's administrative exemption..............................................................................6

LAW AND ARGUMENT ........................................................................................7

    I.    BY SUBMITTING ONLY HER AFFIDAVIT, MALENA HAS FAILED TO DEMONSTRATE EVEN A FACTUAL NEXUS BINDING HER AND THE OTHER POTENTIAL CLASS MEMBERS ........................7

    II.    PRELIMINARY CERTIFICATION OF A COLLECTIVE ACTION OF ALL EXECUTIVE ASSISTANTS IS INAPPROPRIATE BECAUSE THERE WAS NO COMMON POLICY OR PLAN THAT RESULTED IN A VIOLATION OF THE LAW .......................................................11

    III.    PRELIMINARY CERTIFICATION OF A COLLECTIVE ACTION OF ALL EXECUTIVE ASSISTANTS IS INAPPROPRIATE BECAUSE MALENA IS NOT SIMILARLY SITUATED TO THE OTHER EXECUTIVE ASSISTANTS .............................................................11

    IV.    EMPLOYEES OF VICTORIA'S SECRET STORES SHOULD NOT BE INCLUDED IN ANY COLLECTIVE ACTION BECAUSE IT IS NOT A JOINT EMPLOYER .............................................................................17

    V.    IF THE COURT FINDS CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION IS APPROPRIATE, NOTICE IS ONLY WARRANTED FOR A TWO-YEAR PERIOD.......................................20

VI.    IF THE COURT CERTIFIES A CLASS, MALENA PROPOSED
       NOTICE IS DEFECTIVE IN SEVERAL RESPECTS AND CANNOT BE
       ADOPTED WHOLESALE ................................................................................22

       A.    Minimal or lacking information in the notice regarding
             Defendants' position is unfairly prejudicial..............................................22

       B.    Plaintiff's proposed notice improperly summarizes an FLSA
             collective action .......................................................................................23

CONCLUSION................................................................................................................23

CERTIFICATE OF SERVICE .........................................................................................25

## TABLE OF AUTHORITIES

**PAGE**

## CASES

Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459 (S.D.N.Y. 2008) .................. 10, 15

Arculeo v. On-Site Sales & Marketing, LLC, 321 F. Supp. 2d 604 (S.D.N.Y. 2004) ................ 18

Auer v. Robbins, 519 U.S. 452 (1997) ...................................................................... 12

Balut v. Loral Electronic Sys., 988 F. Supp. 339 (S.D.N.Y. 1997)........................................ 18, 19

Bayles v. American Med. Response of Colo., Inc., 950 F. Supp. 1053 (D.Colo. 1996) ............... 8

Beck v. City of Cleveland, Ohio, 390 F. 3d 912 (6th Cir. 2004), cert. denied, 545
    U.S. 1128 (2005)......................................................................................... 12

Belcher v. Shoeney's, Inc., 927 F. Supp. 249 (M.D. Tenn. 1996)................................................ 22

Belt v. Emcare, Inc., 299 F.Supp.2d 664 (E.D. Tenn. 2003)....................................................... 22

Black and Decker, 2009 WL 1401694 (W.D.N.Y. 2009)............................................................. 11

Boekemeier v. Fourth Universalist Soc'y in the City of New York, 86 F. Supp. 2d
    280 (S.D.N.Y. 2000)....................................................................................... 20

Bowrin v. Catholic Guardian Soc., 417 F. Supp. 2d 449 (S.D.N.Y. 2006) ............................ 20, 21

Brock v. Superior Care, Inc., 840 F.2d 1054 (2d Cir. 1988) ........................................... 20

Cariani v. D.L.C. Limousine Serv., 363 F. Supp. 2d 637 (S.D.N.Y. 2005) ............................... 12

Clausman v. Nortel Networks, Inc., 2003 WL 21314065 (S.D. Ind. May 1, 2003)..................... 17

Conzo v. City of New York, 667 F. Supp. 2d 279 (S.D.N.Y. 2009) ........................................... 12

Debejian v. Atlantic Testing Laboratories, Ltd., 64 F. Supp. 2d 85 (N.D.N.Y. 1999)................ 21

EEOC v. Home Ins. Co., 672 F.2d 252 (2d Cir. 1982)................................................................ 11

Ennis v. TYCO Intern. Ltd., 2004 WL 548796 (S.D.N.Y. Mar. 18, 2004) .................................. 19

Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042 (N.D. Ill. 2003)........................................ 10

Frank v. U.S. West, 3 F.3d 1357 (10th Cir. 1993)....................................................................... 17

Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311 (S.D.N.Y. 2001)................................... 21

Harrison v. McDonald's Corp., 411 F. Supp. 2d 862 (S.D. Ohio 2005) ................................. 10, 11

Heagney v. European American Bank, 12 F.R.D. 125 (E.D.N.Y. 1988) ........................................ 9

Herman v. RSR Security Services Ltd., 172 F.3d 132 (2d Cir. 1999).......................................... 18

Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165 (1989) ........................................................ 7, 15

Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265 (M.D. Ala. 2004) ........................................... 16, 17

Jacobs v. N.Y. Foundling Hosp., 483 F. Supp. 2d 251 (E.D.N.Y. 2007) ........................................ 8

Kellett v. Glaxo Enterprises, Inc., 1994 WL 669975 (S.D.N.Y. Nov. 30, 1994) ......................... 19

Lynch v. United States Auto Ass'n, 491 F. Supp. 2d 357 (S.D.N.Y. 2007)....................... 9, 10, 11

Marshall v. Baptist Hosp., Inc., 668 F. 2d 234 (6th Cir. 1981) .................................................... 12

McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)............................................................. 20

Mendoza v. Casa de Cambio Delgado, Inc., 2008 WL 938584 (S.D.N.Y. Apr. 7,
    2008) ...................................................................................................................................... 9

Mike v. Safeco Ins. Co. of Am., 274 F. Supp. 2d 216 (D. Conn. 2003)....................................... 16

Morales v. Plantworks, Inc., 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).................................. 8, 9

Morisky v. Public Serv. Elec. and Gas Co., 111 F. Supp. 2d 493 (D.N.J. 2000) .................... 8, 16

Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996)....................................................................... 17

Palmer v. Readers Digest Ass'n, 1986 WL 11458 (S.D.N.Y. Oct. 3, 1986) ................................. 9

Pfaahler v. Consultants for Architects, Inc., 2000 WL 198888 (N.D. Ill. Feb. 8, 2000).............. 16

Prizmic v. Armour, Inc., 2006 WL 1662614 (E.D.N.Y. Jun. 12, 2006)......................................... 9

Reich v. American Int'l Adjustment Co., Inc., 902 F. Supp. 321 (D. Conn. 1994) ...................... 12

Schade v. Coty, Inc., 2001 WL 709258 (S.D.N.Y. June 25, 2001).............................................. 18

Scholtisek v. Eldre Corp., 229 F.R.D. 381 (W.D.N.Y. 2005) ................................................... 7, 8

Severtson v. Phillips Beverage Co., 137 F.R.D. 264 (D.Minn. 1991)........................................ 7, 9

Sheffield v. Orius Corp., 211 F.R.D. 411 (D. Or. 2002) .............................................................. 15

Snyder v. Advest, Inc., 2008 WL 4571502 (S.D.N.Y. 2008)....................................................... 19

Taylor v. Vermont Dept. of Educ. 313 F.3d 768 (2d Cir. 2002) ................................................. 12

iv

Tracy v. NVR, Inc., 599 F. Supp. 2d 359, 363 (W.D.N.Y. 2009) .................................................. 12

**STATUTES**

29 U.S.C. § 203(d) .......................................................................................................... 18

29 U.S.C. § 213(a)(1).......................................................................................................... 12

29 U.S.C. § 216(b) ..................................................................................................... 7, 23

29 U.S.C. § 255.................................................................................................................... 20

29 U.S.C. § 259.............................................................................................................. 11, 12

**REGULATIONS**

29 C.F.R. § 541.200 .......................................................................................................... 13

29 C.F.R. § 541.201(a)(1).................................................................................................... 13

29 C.F.R. § 541.203(d) ...................................................................................................... 13

29 C.F.R. § 541.207(d)(2).................................................................................................... 13

29 C.F.R. §§ 790.13 to 790.19 .......................................................................................... 11

69 Fed. Reg. 22146 .............................................................................................................. 13

## INTRODUCTION

Plaintiff Fredda Malena has not met her burden for preliminary collective action certification because there was no common policy or plan that violated the Fair Labor Standards Act ("FLSA") and she is not similarly situated to Defendants' Executive Assistants. Accordingly, her Motion should be denied.

Malena incorrectly claims that she is similarly situated to all of Defendants' Executive Assistants because they all were misclassified as exempt and, therefore, denied overtime pay. There is, however, no common policy or plan that violated the law because Defendants properly classified their Executive Assistants as exempt in good faith reliance upon and in conformity with U.S. Department of Labor ("USDOL") regulations and interpretations and, therefore, have an absolute to defense to liability under the Portal-to-Portal Act as a matter of law. Indeed, the only "common policy or plan" demonstrates the proper classification of at least 19 Executive Assistants, each of whom has provided a declaration affirming her performance of exempt duties. Additionally, Malena's reliance on a job description is flawed because the job description includes the very duties that the USDOL deems exempt, such as arranging meetings and replying to correspondence. For this reason, Malena cannot show that she is "similarly situated" to other Executive Assistants.

Moreover, to be exempt from overtime pay under the USDOL's regulations interpreting the FLSA's "administrative exemption," the Executive Assistant must be paid on a salaried basis of at least $455 per week and have as a primary duty the performance of office or non-manual work involving the exercise of discretion and independent judgment over matters of significance. According to the USDOL, such exempt duties include arranging meetings, replying to correspondence, and preparing replies on behalf of an executive. While Malena claims that she

did not perform work entailing the exercise of discretion and independent judgment over matters of significance, 19 Executive Assistants – five of whom Malena herself identifies in her Affidavit – have declared under penalty of perjury that they routinely exercise the very duties specified as exempt by the USDOL. If Malena seeks to represent these 19 Executive Assistants by claiming she is "similarly situated" to them, then she is exempt from overtime pay just as they are. If Malena claims she is not "similarly situated" to these 19 Executive Assistants, then these Executive Assistants – who have testified to their exempt duties – cannot be part of any collective action.

## STATEMENT OF FACTS

I.    **EXECUTIVE ASSISTANTS' JOB DUTIES AND RESPONSIBILITIES.**

    A.    **Executive Assistants are paid on a salaried basis**.

Executive Assistants employed by Limited Brands' entities are paid on an exempt, salaried basis. Executive Assistants are not paid overtime, and are not required to "clock in" or otherwise record their hours of work.[1] Executive Assistants are paid more than $455 per week. (First) Declaration of Douglas L. Williams ¶1.[2]

---

[1] Graham Decl. 2; Cambeiro Decl. 2; Debolt Decl. 3; Egan Decl. 2; Wardlow Decl. 2; Belleau Decl. 3; Kirk Decl. 2; Stroup Decl. 3; Hall Decl. 1; McCann Decl. 3; Rogan Decl. 2; Giliberti Decl. 2; Clanin Decl. 2; Garavuso Decl. 2; Tremper Decl. 3; McClellan Decl. 2; Gebensleben Decl. 2; Kelly-Kerr Decl. 2; Poulton Decl. 2; Reyes Decl. 2; Tinsley Decl. 2; Thomas Decl. 2. These Declarations are attached to the Declaration of Michael C. Griffaton, Esq. in Support of Defendants' Opposition to Plaintiff's Motion for Preliminary Collective Action Certification.

[2] Douglas L. Williams' (First) Declaration is attached as Exhibit A to the Declaration of Michael C. Griffaton in Support of Defendants' Motion for Partial Summary Judgment (Doc. #29).

B.    **Executive Assistants' primary duties and responsibilities are directly related to management or general business operations and involve the exercise of discretion and independent judgment over matters of significance.**

Executive Assistants' duties and responsibilities revolve around serving their executive's needs. Accordingly, the Executive Assistant must be aware of the executive's changing needs and priorities and quickly respond to them with minimal immediate direction and supervision.[3]

The fashion retail business is dynamic and so the work of an Executive Assistant at the Limited Brands' entities is neither routine nor repetitive. Consequently, Executive Assistants have been delegated authority over a wide array of matters without specific procedures or prescribed guidelines. This means that virtually every aspect of the Executive Assistant's job requires the routine exercise of discretion and independent decision-making, which is in turn based on a combination of expertise and skills, knowledge of company policies and procedures, ability to research and otherwise develop solutions when difficulties arise, ability to work collaboratively with other Executive Assistants, discretion, and ability to learn and act upon the personal preferences and needs of the executive supported.[4]

Executive Assistants spend much of their working time attending to their executives or executives' calendar, email and related issues. Because so much of an executive's work is meeting-based, it is critical that Executive Assistants keep the calendar current and accurate, and in managing an executive's calendar, Executive Assistants routinely exercise their own independent judgment and discretion regarding these extremely significant aspects of the

---

[3] Graham Decl. 7; Debolt Decl. 8; Egan Decl. 9; Wardlow Decl. 8; Belleau Decl. 8; Kirk Decl. 7; Stroup Decl. 8; Hall Decl. 8; McCann Decl. 8; Rogan Decl. 8; Giliberti Decl. 6; Clanin Decl. 8; Garavuso Decl. 8; Tremper Decl. 6; McClellan Decl. 8; Gebensleben Decl. 7; Kelly-Kerr Decl. 7; Tinsley Decl. 6.

[4] Graham Decl. 19; Cambeiro Decl. 14, 15; Debolt Decl. 23; Wardlow Decl. 19; Belleau Decl. 19; Stroup Decl. 18; Hall Decl. 21; McCann Decl. 19; Clanin Decl. 21; Garavuso Decl. 19; Tremper Decl. 19; Gebensleben Decl. 18; Poulton Decl. 6; Tinsley Decl. 17.

executive's work.[5] This is not merely typing in a meeting reminder on an electronic calendar. The nature of the meeting, what is required for the meeting, when the meeting must be held, and who must attend constantly change depending on what product is being developed or launched. An Executive Assistant uses his or her knowledge of these changes in deciding among conflicting meeting requests (which may involve coordinating executives' schedules with other Executive Assistants) and making other scheduling decisions and travel arrangements for the executive.[6] While an Executive Assistant may consult their executive on those rare scheduling conflicts which, in the Executive Assistant's judgment, require the executive's input to resolve, Executive Assistants routinely exercise discretion and make independent judgments in making other long- and short-term scheduling decisions on the executive's behalf without consulting him or her.[7]

Executive Assistant's operate as a "gatekeeper" for the executive, in that meeting requests are typically directed through the Executive Assistant. The Executive Assistant uses his or her judgment to determine the priority of these requests. It is only on those rare occasions when the Executive Assistant is for some reason unsure about what the priorities should be that

---

[5] Graham Decl. 6; Cambeiro Decl. 7; Egan Decl. 8; Wardlow Decl. 6; Belleau Decl. 7; Kirk Decl. 6; Stroup Decl. 7; Hall Decl. 6; McCann Decl. 7; Rogan Decl. 5; Giliberti Decl. 5; Clanin Decl. 6; Garavuso Decl. 7; Tremper Decl. 5; McClellan Decl. 7; Gebensleben Decl. 6; Kelly-Kerr Decl. 6; Reyes Decl. 5; Tinsley Decl. 5; Thomas Decl. 6.

[6] Graham Decl. 7; Debolt Decl. 8; Egan Decl. 9; Wardlow Decl. 8; Belleau Decl. 8; Kirk Decl. 7; Stroup Decl. 8; Hall Decl. 8; McCann Decl. 8; Rogan Decl. 8; Giliberti Decl. 6; Clanin Decl. 8; Garavuso Decl. 8; Tremper Decl. 6; McClellan Decl. 8; Gebensleben Decl. 7; Kelly-Kerr Decl. 7; Tinsley Decl. 6.

[7] Graham Decl. 6; Cambeiro Decl. 7; Egan Decl. 8; Wardlow Decl. 6; Belleau Decl. 7; Kirk Decl. 6; Stroup Decl. 7; Hall Decl. 6; McCann Decl. 7; Rogan Decl. 6; Giliberti Decl. 5; Clanin Decl. 6; Garavuso Decl. 7; Tremper Decl. 5; McClellan Decl. 7; Gebensleben Decl. 6; Kelly-Kerr Decl. 6; Reyes Decl. 5; Tinsley Decl. 5; Thomas Decl. 6.

the Executive Assistant consults with the executive on such conflicts.[8]  Moreover, Executive

Assistants are responsible for determining which, if any, materials an executive needs to

participate in various meetings, and for providing those materials.  This requires the Executive

Assistant, on his or her own initiative, to review the executive's calendar on a frequent basis,

identify upcoming meetings, identify what materials will be needed for those meetings, and then

compile those materials.  Executive Assistants are required to act independently, think on their

own, and proactively manage the executive's calendar and related issues.[9]

     Executive Assistants also review the executive's emails and have the authority and

discretion to delete emails that they determine are "junk" mail or otherwise are not ones that, in

their judgment, the executive needs to see.  The Executive Assistant exercises his or her

discretion in deciding which if any emails to flag for the executive's attention or to print out for

his or her review and will also decide which emails to respond to on the executive's behalf.[10]

     An Executive Assistant's work requires him or her to handle, and to maintain the

confidentiality of, a great deal of confidential or proprietary information, which includes

information about the company that is not to be shared with outsiders, and internally confidential

information.  This information includes extensive financial and strategic information about the

company, as well as salary and performance information concerning executives who report to the

---

[8] Graham Decl. 11; Cambeiro Decl. 8; Egan Decl. 12; Wardlow Decl. 11; Belleau Decl. 10; Kirk
Decl. 10; Stroup Decl. 10; Hall Decl. 11; McCann Decl. 10; Giliberti Decl. 11; Clanin Decl. 11;
Garavuso Decl. 11; Tremper Decl. 11; McClellan Decl. 11; Gebensleben Decl. 10; Kelly-Kerr
Decl. 10; Poulton Decl. 5(c); Reyes Decl. 9; Tinsley Decl. 9; Thomas Decl. 12.

[9] Graham Decl. 10; Cambeiro Decl. 9; Debolt Decl. 9; Egan Decl. 11; Wardlow Decl. 10; Kirk
Decl. 9; Giliberti Decl. 10; Clanin Decl. 10; Garavuso Decl. 10; McClellan Decl. 10;
Gebensleben Decl. 9; Kelly-Kerr Decl. 9; Reyes Decl. 8; Tinsley Decl. 8; Thomas Decl. 11.

[10] Graham Decl. 13; Debolt Decl. 10; Egan Decl. 14; Wardlow Decl. 13; Belleau Decl. 12; Kirk
Decl. 12; Stroup Decl. 11; Hall Decl. 12; McCann Decl. 11; Rogan Decl. 11; Giliberti Decl. 13;
Clanin Decl. 13; Garavuso Decl. 13; Tremper Decl. 13; McClellan Decl. 12; Gebensleben Decl.
12; Kelly-Kerr Decl. 12; Poulton Decl. 5(a); Reyes Decl. 10; Tinsley Decl. 13; Thomas Decl. 13.

executive.  Executive Assistants are required to have a high level of discretion as to how this information is treated and who needs to or should be able to see it.[11]

### C.    Fredda Malena's employment as an Executive Assistant.

Fredda Malena was hired as an Executive Assistant in November 2006 by Victoria's Secret Direct Media, Inc. (now known as Limited Brands Direct Media Production, Inc.). Affidavit of Fredda Malena ¶2.[12]  From January 2007 through February 2009, she worked as an Executive Assistant for Victoria's Secret Stores Brand Management, Inc.  Declaration of Douglas L. Williams¶ 8 (attached as Exhibit A to Griffaton Declaration).  Throughout her employment, Malena was employed as an Executive Assistant only by VBM or VDM;  Malena was never employed by Limited Brands, Victoria's Secret Direct, Victoria's Secret Direct New York, or VSS, which Malena improperly includes in her Motion.  Williams Decl.; ¶9; Malena Aff. ¶2.  From 2006 to 2008, Malena was paid an annual salary of $70,000; in 2009, she was paid an annual salary of $75,000.  Williams Decl. ¶10.

### D.    Defendants' determined that Executive Assistants are properly classified as exempt pursuant to the FLSA's administrative exemption.

From January through April 2005, the USDOL audited and investigated the exempt and non-exempt status of various job positions – including that of Executive Assistant – at VSS for a two-year audit period.[13]  The USDOL determined that the Executive Assistant position qualified

---

[11] Graham Decl. 17; Cambeiro Decl. 12; Debolt Decl. 20; Egan Decl. 18; Wardlow Decl. 16; Belleau Decl. 15; Kirk Decl. 16; Stroup Decl. 15; Hall Decl. 16; McCann Decl. 15; Rogan Decl. 13; Giliberti Decl. 15; Clanin Decl. 17; Garavuso Decl. 15; Tremper Decl. 16; McClellan Decl. 13; Gebensleben Decl. 15; Kelly-Kerr Decl. 14; Poulton Decl. 5(i); Reyes Decl. 14; Tinsley Decl. 15; Thomas Decl. 16.

[12] Malena's Affidavit is attached as Exhibit E to the Affirmation of Anthony Carabba, Jr. in Support of Plaintiff's Motion for Preliminary Collective Action Certification (Doc. #25).

[13] These facts are fully explained in Defendants' Motion for Partial Summary Judgment on Plaintiff's FLSA Individual and Collective Action Claims and New York State Law Claims (Doc. #28), and are incorporated herein by reference.

for the FLSA's administrative exemption from overtime pay. Following that determination, the

General Counsel for Limited Brands' entities (which included all the named corporate

defendants in this action) managed a comprehensive study and analysis of job positions at those

entities, including the Executive Assistant position. Relying on the USDOL's audit

determination, administrative regulations, and enforcement policy concerning the administrative

exemption, the General Counsel found that Executive Assistants were paid on a salaried basis

and performed work involving the exercise of discretion and independent judgment. He

concluded, three years before the filing of this action, that Executive Assistants were properly

classified as exempt. Williams Decl. ¶¶ 11-18 (attached as Exhibit A to Doc. #29).

## LAW AND ARGUMENT

### I.    BY SUBMITTING ONLY HER AFFIDAVIT, MALENA HAS FAILED TO DEMONSTRATE EVEN A MODEST SHOWING OF A FACTUAL NEXUS BINDING HER AND THE OTHER POTENTIAL CLASS MEMBERS.

Although the FLSA provides for collective actions through an "opt in" procedure, 29

U.S.C. § 216(b), a collective action should be permitted to proceed only where it facilitates a

court's ability to resolve multiple claims *efficiently* in one proceeding. Hoffman-LaRoche, Inc.

v. Sperling, 493 U.S. 165, 170 (1989); see also Severtson v. Phillips Beverage Co., 137 F.R.D.

264, 266 (D.Minn. 1991) (the "power [to authorize court-supervised notice to potential class

members] is to be exercised ... only in 'appropriate cases,' and remains within the discretion of

the district court."). Section 216(b) provides that only "similarly situated" employees may

utilize the opt in procedure. Id.

The courts in this Circuit utilize a two-tiered approach when deciding whether a suit

should proceed as a collective action. Scholtisek v. Eldre Corp., 229 F.R.D. 381, 387 (W.D.N.Y.

2005). The first stage of this "two-tiered" process is referred to as the "notice" stage:

7

> In the first step, the court examines the pleadings and affidavits of the proposed collective action and determines whether the proposed class members are 'similarly situated.' If the court finds that the proposed class members are similarly situated, the court 'conditionally certifies' the class. Putative class members are given notice and the opportunity to 'opt in' and the action proceeds as a representative action throughout discovery.

Scholtisek, 229 F.R.D. at 387; Morales v. Plantworks, Inc., 2006 WL 278154, at *1 (S.D.N.Y.

Feb. 2, 2006); Jacobs v. N.Y. Foundling Hosp., 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007).

After notice has been sent and discovery has largely been completed, the case enters the second

stage in which the court revisits its preliminary determination that other employees are similarly

situated to the plaintiffs. This stage is typically precipitated by the defendant's filing of a motion

for decertification challenging the court's conditional certification of a class. See Jacobs, 483 F.

Supp. 2d at 265; Morales, 2006 WL 278154, at *1. If the Court finds that the claimants are

similarly situated, the collective action proceeds to trial. If, however, the court finds that

claimants are not similarly situated, the court decertifies the class, the claims of the opt-in

plaintiffs are dismissed, and the named plaintiff then proceeds to trial on her individual claims.

Scholtisek, 229 F.R.D. at 387.

At the first stage, "[p]laintiffs bear the burden of showing they are similarly situated to

the remainder of the proposed class." Morisky v. Public Serv. Elec. and Gas Co., 111

F. Supp. 2d 493, 496 (D.N.J. 2000), citing Bayles v. American Med. Response of Colo., Inc.,

950 F. Supp. 1053, 1062-63 (D.Colo. 1996). Although the FLSA and its regulations do not

define the term "similarly situated," courts in this Circuit have held that a plaintiff can meet this

burden by making a "modest factual showing" sufficient to demonstrate that she and potential

plaintiffs together were "victims of a common policy or plan that violated the law." Lynch v.

United States Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); Morales, 2006 WL

278154, at *2.

While "modest," this burden is real.  It is not, as Malena would have it, non-existent.

Indeed, this burden requires that Malena show "a demonstrated similarity among the individual

situations[,].... some identifiable factual nexus which binds the named plaintiffs and the potential

class members together." Heagney v. European American Bank, 12 F.R.D. 125, 127 (E.D.N.Y.

1988) (quoting Palmer v. Readers Digest Ass'n, 1986 WL 11458, at *1 (S.D.N.Y. Oct. 3, 1986));

Mendoza v. Casa de Cambio Delgado, Inc., 2008 WL 938584, at *1 (S.D.N.Y. Apr. 7, 2008)

("conclusory allegations or lack of a nexus with the putative class will prevent the case from

moving forward as a collective action.").  As one court has stated:

> The courts, as well as practicing attorneys, have a responsibility to
> avoid the "stirring up" of litigation through unwanted solicitation.
> … [T]his court feels a responsibility to assure that there is some
> factual basis for plaintiffs' claims of class-wide discrimination
> before judicial approval of the sending of notice is granted.  A
> factual showing is particularly appropriate in this case given that
> defendants have challenged the allegations of the complaint by
> submitting affidavits and deposition testimony tending to show that
> no widespread practice of discrimination exists at the defendant
> companies…Requiring a showing that there is some factual basis
> for the class allegations…hardly places an unreasonable burden on
> the plaintiffs…To obtain court authorization to send the proposed
> notice, plaintiffs must submit evidence establishing at least a
> colorable basis for their claim that a class of "similarly situated"
> plaintiffs exist.

Severtson 137 F.R.D. at 266-67; Prizmic v. Armour, Inc., 2006 WL 1662614, at *2 (E.D.N.Y.

Jun. 12, 2006) (finding that a plaintiff must "provide actual evidence of a factual nexus between

his situation and those that he claims are similarly situated rather than mere conclusory

allegations.  Absent such a showing, an employer may be "unduly burdened by a frivolous

fishing expedition conducted by plaintiff at the employer's expense.") (internal citations

omitted).

9

Moreover, this Court should scrutinize the record to date in ruling on Malena's Motion. In Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459 (S.D.N.Y. 2008), this Court denied conditional certification where the evidence showed that the putative class members were administratively exempt, stating:

> Although district courts have held that the merits of a plaintiff's FLSA claim should not be evaluated in determining whether to authorize notice, see e.g., Lynch, 491 F. Supp. 2d at 368, these holdings may have derived from jurisprudence discouraging engagement with the merits that was developed in the context of a Rule 23 class action certification…This Court will, therefore, scrutinize the merits based on the record developed to date by the parties and to the extent necessary to address this Motion for authorization of notice.

Id. at 487 n. 9. See also Harrison v. McDonald's Corp., 411 F. Supp. 2d 862, 870, 871 (S.D. Ohio 2005) (where the court reviewed the record and denied preliminary certification because plaintiff submitted only her own and one other class member's affidavit which provided "nothing but speculation" and "scant evidence that any employee, other than Plaintiff, was not fully compensated for all the hours he or she worked").

Such scrutiny leads to one conclusion, and that is: Malena has not met her burden of demonstrating that there has been a violation of the law or that she is similarly situated to the proposed class she seeks to represent. Like the Amendola and Harrison plaintiffs, Malena supports her Motion with only her own affidavit containing only conclusory allegations. Despite having the contact information for at least 19 of the potential class members since September and October, 2009, and eight months of discovery, Malena has not submitted any affidavits from any of the 41 other potential class members. Thus, her affidavit does not amount to even a modest factual showing of a nexus between her and the other Executive Assistants. See Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (evidence that only 2 out of 50

10

employees were not properly paid overtime wages did not constitute even a "modest factual showing" of a common policy or plan); Harrison, 411 F. Supp. 2d at 870-71.  Accordingly, her Motion should be denied.

## II.  PRELIMINARY CERTIFICATION OF A COLLECTIVE ACTION OF ALL EXECUTIVE ASSISTANTS IS INAPPROPRIATE BECAUSE THERE WAS NO COMMON POLICY OR PLAN THAT RESULTED IN A VIOLATION OF THE LAW.

As fully explained in Defendants' Memorandum in Support of Their Motion for Partial Summary Judgment (Doc. #28), which Defendants incorporate herein by reference, Section 259 of the Portal-to-Portal Act (29 U.S.C. § 259; 29 C.F.R. §§ 790.13 to 790.19) completely immunizes Defendants from any liability under the FLSA as a matter of law.  Defendants cannot be liable for any damages for allegedly unpaid overtime to Executive Assistants because Defendants acted in good faith, in conformity with, and in reliance on a written USDOL ruling, current USDOL regulations, and the USDOL Field Operations Handbook in determining that Executive Assistants were exempt from overtime compensation.  See Defendants' Memorandum in Support at 15-18 (Doc. #28); EEOC v. Home Ins. Co., 672 F.2d 252, 263 (2d Cir. 1982); Black and Decker, 2009 WL 1401694, at *11 (W.D.N.Y. 2009).  Thus, there is no "violation of law" as the basis of Malena's collective action.

## III.  PRELIMINARY CERTIFICATION OF A COLLECTIVE ACTION OF ALL EXECUTIVE ASSISTANTS IS INAPPROPRIATE BECAUSE MALENA IS NOT SIMILARLY SITUATED TO THE OTHER EXECUTIVE ASSISTANTS.

Malena must also show evidence of a "common policy or plan" that led to such violation. See Lynch, 491 F. Supp. 2d at 368.  Malena alleges that she spent her time as the Executive Assistant to the Executive Vice President in charge of Brand and Creative Services performing non-exempt tasks and, as such, Defendants misclassified her and all other Executive Assistants as exempt from overtime.  Malena's conclusory allegation is insufficient to meet her factual

burden because the duties performed by other Executive Assistants are exempt under USDOL regulations, USDOL Field Operations Handbook, and the USDOL Compliance Audit Report. The other Executive Assistants, some of whom Malena refers to in her affidavit, performed the very duties that the USDOL concludes are exempt.

The FLSA exempts employees employed in a "bona fide executive, administrative, or professional capacity" from its minimum wage and overtime pay requirements. 29 U.S.C. § 213(a)(1). The Secretary of Labor has broad authority to define these exemptions by regulations, and such regulations are entitled to great deference. Auer v. Robbins, 519 U.S. 452, 461 (1997); Taylor v. Vermont Dept. of Educ. 313 F.3d 768, 780 (2d Cir. 2002) ("An agency's consistent interpretation of its regulations is to be given controlling weight unless plainly erroneous or inconsistent with the regulation."). Additionally, the Wage and Hour Division of the USDOL issues opinion letters concerning the FLSA regulations as they apply to particular job duties. An opinion letter signed by the Administrator of the Wage and Hour Division is an official ruling or interpretation of the USDOL for purposes of the Portal-to-Portal Act, 29 U.S.C. § 259. Such opinion letters are also entitled to deference. See e.g., Beck v. City of Cleveland, Ohio, 390 F. 3d 912 (6th Cir. 2004), cert. denied, 545 U.S. 1128 (2005); Tracy v. NVR, Inc., 599 F. Supp. 2d 359 (W.D.N.Y. 2009); Conzo v. City of New York, 667 F. Supp. 2d 279, 291 (S.D.N.Y. 2009). The USDOL Field Operations Handbook is likewise entitled to deference. Marshall v. Baptist Hosp., Inc., 668 F. 2d 234, 237 (6th Cir. 1981) (relying on the Handbook to clarify a USDOL regulation). See also Reich v. American Int'l Adjustment Co., Inc., 902 F. Supp. 321, 323-24 (D. Conn. 1994); Cariani v. D.L.C. Limousine Serv., 363 F. Supp. 2d 637, 641 (S.D.N.Y. 2005).

Under the FLSA regulations, the Executive Assistant must meet each of the following criteria to satisfy the "administrative" exemption:

1) Be compensated on a salary or fee basis at a rate of not less than $455 per week.

2) Have as a primary duty the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.

3) Have as a primary duty the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200.

The USDOL has consistently recognized certain duties of an Executive Assistants as satisfying the administrative exemption. Under prior regulations, the USDOL explained that "[g]enerally speaking, such assistants are found in large establishments where the official assisted has duties of such scope and which require so much attention that the work of personal scrutiny, correspondence, and interviews must be delegated." 29 C.F.R. § 541.201(a)(1). And, the USDOL made clear that such assistants do exercise discretion and independent judgment, as the regulations "contemplate the kind of discretion and independent judgment exercised by an administrative assistant to an executive, who without specific instructions or prescribed procedures, arranges interviews and meetings, and handles callers and meetings himself where the executive's personal attention is not required." 29 C.F.R. § 541.207(d)(2). This position of the USDOL was unchanged when it adopted the new "white collar" regulations in 2004. See 69 Fed. Reg. 22146 (Apr. 23, 2004) ("The final rule makes no changes to current law..."). In the 2004 regulations, the USDOL reiterated that:

> An executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance.

29 C.F.R. § 541.203(d). Similarly, the USDOL Field Operations Handbook specifically states:

13

> Executive secretaries customarily and regularly exercise discretion and independent judgment in matters of significance rather than adhere to a set of prescribed procedures or specific instructions by: arranging interviews and meetings, determining whether to handle interviews and meetings themselves, replying to correspondence, preparing replies for the executive, and determining whether they should respond or whether the executive should.

United States Department of Labor, Wage and Hour Division, Field Operations Handbook, § 22d11. See Exhibit X of Declaration of Michael C. Griffaton (Doc. #29). A similar result has been reached in agency opinion letters on the subject. See, e.g., Opinion Letter FLSA 2006-23NA (10/26/06).

At all times, Defendants have paid their Executive Assistants on a salary basis in an amount exceeding $455 per week. The declarations of the Executive Assistants submitted by Defendants indicate that Executive Assistants perform many duties identified by the USDOL as office or non-manual work directly related to management or general business operations (including: planning, scheduling, and arranging meetings and travel on both a short and long-term basis; preparing materials for meetings; reviewing and replying to executive's correspondence). See generally Executive Assistant Declarations. Those Declarations further demonstrate that Executive Assistants perform many, if not all, of their job duties with independent discretion and judgment recognized by the USDOL as sufficient to satisfy the requirements of that exemption.

For example, five of the Executive Assistants whom Malena references in her affidavit (see Malena Aff. ¶6), testified that their work includes arranging meetings and screening and replying to the executive's correspondence. See Debolt, Garavuso, Giliberti, Kelly-Kerr, and Reyes Declarations. These are the very duties that the USDOL determined to be exempt duties of an Executive Assistant.

Moreover, Malena's reliance on the job descriptions is flawed. First, the job descriptions contain the very exempt duties specified by the USDOL. Compare Plaintiff's Memorandum in Support, Exhibits F and G (Doc. #25), with USDOL Field Operations Handbook, Exhibit X (Doc. #29). For example, both the job descriptions and the USDOL list as exempt duties arranging meetings (or managing the executive's calendar) and responding to correspondence. Additionally, the 19 Declarants performed those exempt duties consistent with the USDOL analysis for the exemption.

Therefore, to the extent Malena's Affidavit demonstrates, as she claims, that her duties do not satisfy the requirements of the administrative exemption, she is unable to show that she is similarly situated to the other 19 Executive Assistants who have testified that they do perform "exempt" duties or those duties are defined by the USDOL.

While Malena asserts in her Motion that it is inappropriate for the Court to engage in an evaluation of the merits of their FLSA claim, this Court recently held that such a scrutiny of the record to date is appropriate. See Amendola, 558 F. Supp. 2d at 467 n. 9. Furthermore, the purpose of a collective action is the "efficient resolution in one proceeding of common issues of law and fact." Hoffman-LaRoche, Inc., 493 U.S. at 170. Collective action certification is not appropriate where certification would require the court to engage in burdensome individualized inquiries of each class member's eligibility for overtime under the FLSA, thereby obviating the judicial economies of scale and efficiencies underpinning FLSA collective actions. See e.g. Sheffield v. Orius Corp., 211 F.R.D. 411, 413 (D. Or. 2002) (denying certification because each claim would require extensive consideration of individualized issues of liability, and stating that "[a]n action dominated by issues particular to individual plaintiffs cannot be administered efficiently because individual issues predominate over collective concerns"). See also Mike v.

15

Safeco Ins. Co. of Am., 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) (denying collective action

certification "because the proof in this case is specific to the individual..."); Pfaahler v.

Consultants for Architects, Inc., 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) (denying

motion for collective action when "the court would be required to make a fact-intensive,

individual determination as to the nature of each potential claimant's employment relationship

with [defendant]").

  To determine whether Malena is similarly situated to the other Executive Assistants, the

Court will necessarily be required to conduct an individualized factual inquiry of the exempt

nature of each Executive Assistant's actual job duties.  See Morisky, 111 F. Supp. 2d 493, 498

(D.N.J. 2000) ("To determine which employees are entitled to overtime compensation under the

FLSA depends on an individual, fact-specific analysis of each employee's job responsibilities

under the relevant statutory exemption criteria.").  Thus, in Holt v. Rite Aid Corp., 333

F. Supp. 2d 1265 (M.D. Ala. 2004), the court concluded that Rite Aid managers and assistant

managers were not similarly situated because the court would have to engage in an

inappropriately individualized examination of the day to day tasks of each employee.  The Holt

court reviewed declarations submitted by the defendant which contradicted the plaintiff's

allegation that managers spent the overwhelming majority of their time performing non-exempt

tasks and, in denying conditional certification of a collective action, concluded:

> ... [S]ubstantial evidence has been presented which indicates to
> this court that, if the case were conditionally certified as a
> collective action at this stage, the court would have to inquire at a
> second stage as to the daily tasks of each putative collective action
> member to determine whether they are similarly situated to the
> persons identified by the Plaintiffs, and then, on the merits,
> whether they had suffered an FLSA violation because they were
> not eligible for overtime compensation. ... The court cannot
> conclude, therefore, that a nationwide group of Store Managers

and Assistant Managers, or even a regional group, is similarly situated for purposes of certifying a collection action.

Id. at 1274-75. See also Clausman v. Nortel Networks, Inc., 2003 WL 21314065 (S.D. Ind. May 1, 2003) (declining to conditionally certify a collective action, following examination of competing witness affidavits, where employer's defense that it properly classified each potential claimant as exempt required an individual assessment of each claimant's factual circumstances, including how much time each claimant spent performing non-exempt work).

Given Malena's theory that she was misclassified as exempt, the determination of whether other Executive Assistants are similarly situated concerning their duties would require a mini-trial as to the nature and type of each Executive Assistant's duties as well as the different ways in which each Executive Assistant performs those duties. This type of individualized inquiry dictates that Defendants' Executive Assistants are simply not similarly situated. Holt, 333 F. Supp. 2d at 1274-75. Conditional certification of a collective action based upon Malena's claim of misclassification should, therefore, be denied.

## IV.    EMPLOYEES OF VICTORIA'S SECRET STORES SHOULD NOT BE INCLUDED IN ANY COLLECTIVE ACTION BECAUSE IT IS NOT A JOINT EMPLOYER.

Though she was never employed by Victoria's Secret Stores ("VSS"), Malena has sued VSS, in addition to her two actual employers, Limited Brands Direct Media Production ("VDM"), and Victoria's Secret Stores Brand Management ("VBM"), and seeks to include the VSS Executive Assistants as similarly situated employees in her collective action. "The law allows a corporation to organize so as to isolate liabilities among separate entities." Murray v. Miner, 74 F.3d 402, 404 (2d Cir. 1996) (citing Frank v. U.S. West, 3 F.3d 1357, 1362 (10th Cir. 1993)). Accordingly, "a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances." Murray, 74 F.3d at 404 (citation omitted). Similarly, "the

17

law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." Id. (citation omitted). VSS, VBM, VDM, and Limited Brands are not joint employers under the FLSA's "economic reality test" and so Malena's attempt to include VSS and its Executive Assistants in this collective action fails.

The joint employer doctrine "assumes separate legal entities that have chosen to handle certain aspects of their employer-employee relationships jointly." Arculeo v. On-Site Sales & Marketing, LLC, 321 F. Supp. 2d 604, 608 (S.D.N.Y. 2004). For VSS to be a joint employer, Malena must establish as a matter of "economic reality," "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman v. RSR Security Services Ltd., 172 F.3d 132, 138 (2d Cir. 1999). While no one factor is dispositive, here, none of the factors are present with respect to VSS.

Plaintiff's assertions concerning a common holding company among VSS, VDM, and VBM is misplaced. Limited Brands is a holding company with no employees and so cannot constitute an employer under the FLSA. Williams Decl. ¶2. See 29 U.S.C. § 203(d) ("employer" is any person "acting directly or indirectly in the interest of an employer in relation to an employee."). There is "a strong presumption that a parent is not the employer of its subsidiary's employees." Balut v. Loral Electronic Sys., 988 F. Supp. 339, 344 (S.D.N.Y. 1997) (citation omitted). Limited Brands was not involved in the daily operations or decision-making of VSS, VBM, or VDM. Williams Decl. ¶7. See Schade v. Coty, Inc., 2001 WL 709258, at *7 (S.D.N.Y. June 25, 2001) (finding no evidence that the parent holding company had any involvement in subsidiary's day-to-day affairs).

Although Limited Brands may have provided VSS, VBM, and VDM employees with certain corporate policies, "[t]he mere fact that [Malena] agreed to be bound by certain standards of conduct set forth by [Limited Brands] does not indicate that [Limited Brands] exercised control over or made final decisions regarding the employment of [Malena]." Snyder v. Advest, Inc., 2008 WL 4571502, at * 7 (S.D.N.Y. 2008) (quoting Ennis v. TYCO Intern. Ltd., 2004 WL 548796, at *4 (S.D.N.Y. Mar. 18, 2004)). Moreover, the mere fact that some employment-related documents state "Limited Brands" is irrelevant and does not show that the entities are joint employers. Thus, evidence that VSS, VBM, and VDM may have shared or "maintained the same benefits [i.e., life insurance and stock purchase plan] does not suggest centralized control of labor relations." Balut, 988 F.Supp. at 347; Kellett v. Glaxo Enterprises, Inc., 1994 WL 669975, at *5 (S.D.N.Y. Nov. 30, 1994) ("common benefits package speaks only to economies of scale ... and not to centralized control of labor relations"). "A parent's broad general policy statements regarding employment matters are not enough..." Balut, 988 F. Supp. at 347; Snyder, 2008 WL 4571502, at * 7.

Similarly, reliance on the VSS USDOL audit does not make VSS a joint employer with VBM or VDM. As explained in Defendants' Memorandum (Doc. #28), Douglas Williams, as Defendants' General Counsel, relied on the USDOL's Compliance Audit Report of VSS, USDOL regulations and the USDOL Field Operations Handbook as persuasive legal authority to determine whether Defendants' Executive Assistants were exempt. Such reliance does not mean that VSS is a joint employer with the other Defendants. Indeed, VSS had a different decision-maker concerning the exempt status of its Executive Assistants – the USDOL. General Counsel Douglas Williams, with a team he oversaw, was the decision-maker concerning the exempt

status of Executive Assistants of VBM and VDM.  Consequently, the VSS Executive Assistants

are not similarly situated to Malena and should not be included in the collective action.

**V.      IF THE COURT FINDS CONDITIONAL CERTIFICATION OF A COLLECTIVE
         ACTION IS APPROPRIATE, NOTICE IS ONLY WARRANTED FOR A TWO-
         YEAR PERIOD.**

The FLSA provides for a two-year statute of limitations for overtime and minimum wage

violations, unless the violations at issue are proven to be willful, in which case the statute of

limitations extends to three years.  29 U.S.C. § 255; McLaughlin v. Richland Shoe Co., 486 U.S.

128, 135 (1988).  Malena's Motion seeks to certify a conditional class that extends back three

years.  But, there is no evidence that Defendants willfully violated the FLSA.

The Second Circuit has explained that "a violation is willful for purposes of the FLSA

limitations provision only if the employer knowingly violates or shows reckless disregard for the

provisions of the Act."  Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988).

"Willfulness cannot be found on the basis of mere negligence or 'on a completely good faith but

incorrect assumption that a pay plan complied with the FLSA in all respects.'"  Bowrin v.

Catholic Guardian Soc., 417 F. Supp. 2d 449, 475 (S.D.N.Y. 2006) (quoting Boekemeier v.

Fourth Universalist Soc'y in the City of New York, 86 F. Supp. 2d 280, 288 (S.D.N.Y. 2000)).

Indeed, Defendants' classification of Malena and other Executive Assistants was made in good

faith and is consistent with, and in reliance on, the USDOL's Opinion Letter, Field Operations

Handbook, regulations, and Compliance Audit Report.  See (First) Williams Declaration ¶¶ 11 to

18 (Exhibit A to Doc. #29).

Malena has not alleged facts sufficient to demonstrate that Defendants knowingly

violated the FLSA, or that they were in reckless disregard of the FLSA, in determining that the

Executive Assistants are exempt from the FLSA's overtime provisions.  Indeed, Douglas

Williams' study and analysis following the USDOL audit refute any claim that any alleged violation was willful or done with reckless disregard of the FLSA.[14] Further, the facts presented by each of the Executive Assistants' declarations show that all of those Executive Assistants perform duties sufficient to qualify them for the FLSA's administrative exemption. <u>See generally</u> Executive Assistant Declarations. Consequently, any good faith decision by Defendants to classify Executive Assistants as exempt cannot be said to have been made with knowledge or reckless disregard for the requirements of the FLSA, and Malena cannot make the minimal showing of willfulness required to justify the extension of the statute of limitations from two to three years. <u>See</u> <u>Bowrin</u>, 417 F. Supp. 2d at 475-76; <u>see also</u> <u>Gustafson v. Bell Atlantic Corp.</u>, 171 F. Supp. 2d 311, 323-24 (S.D.N.Y. 2001) (holding that the two year statute of limitations would apply to the plaintiff's FLSA claim because "plaintiff offered no credible evidence to support his argument that defendants were reckless in failing to determine whether plaintiff was eligible for overtime pay under the FLSA." Rather, "plaintiff merely concluded that willfulness and recklessness existed, without pointing to any concrete evidence in the record."); <u>Debejian v. Atlantic Testing Laboratories, Ltd.</u>, 64 F. Supp. 2d 85, 92 (N.D.N.Y. 1999) (holding that the two year statute of limitations applied to the plaintiff's FLSA claim because the plaintiff presented no evidence that the employer knew that it was violating the FLSA or that it recklessly disregarded its obligations under the FLSA).

Accordingly, if this Court decides to conditionally certify a class, it should properly be limited to only two years.

---

[14] <u>See</u> Defendants' Memorandum in Support of Motion for Partial Summary Judgment (Doc. #28), at 4-5, 15-18.

VI.   **IF THE COURT CERTIFIES A CLASS, MALENA PROPOSED NOTICE IS DEFECTIVE IN SEVERAL RESPECTS AND CANNOT BE ADOPTED WHOLESALE.**

Malena included with her Motion a proposed notice to potential opt-in plaintiffs that it asks the Court to approve. See Exhibit L to Carabba Affirmation (Doc. #25). Malena's notice is deficient as it contains a number of defects and omissions that unfairly prejudice Defendants and otherwise deprive the proposed class members of basic information necessary to inform their decision as to whether or not to opt-in to the litigation. If the Court conditionally certifies a collective action, it should not simply "rubber stamp" Malena's notice. Some of the more prominent deficiencies of Plaintiff's proposed notice that must be remedied are outlined below. Defendants respectfully request leave to address other deficiencies with the Court before approval of any such notice.

A.   **Minimal or lacking information in the notice regarding Defendants' position is unfairly prejudicial.**

While Malena's proposed notice does include a brief statement that Defendants deny Malena's allegations of overtime violations, fairness dictates that Defendants be permitted to further describe their position in the litigation, including any particular defenses they believe they may have. Defendants should also be permitted to state that they believe they have complied with the FLSA in good faith. Indeed, because this may be the first communication potential opt-in plaintiffs receive about this lawsuit, it is particularly critical that the notice contain a full and balanced disclosure of both parties' position in the matter. See e.g. Belcher v. Shoeney's, Inc., 927 F. Supp. 249, 253 (M.D. Tenn. 1996) (authorizing notice that included statement of employer's affirmative defenses); Belt v. Emcare, Inc., 299 F.Supp.2d 664, 671 (E.D. Tenn. 2003) (approving notice that described defendant's affirmative defenses).

22

**B. Plaintiff's proposed notice improperly summarizes an FLSA collective action.**

Plaintiff's proposed notice states as follows:

> If you fill out and return the "Consent to Become Party Plaintiff"
> form attached to this Notice, you are agreeing to designate the
> class representative as your agent to make decisions on your behalf
> concerning the litigation, the method and manner of conducting
> this litigation, the entering of an agreement with Plaintiff's counsel
> concerning attorney's fees and costs, and all other matters
> pertaining to this lawsuit. These decisions and agreements made
> and entered into by the representative Plaintiff will be binding on
> you if you join this lawsuit.

See Exhibit L to Carabba Affirmation (Doc. #25). This is untrue. An opt-in FLSA plaintiff enters the litigation as a party plaintiff and is not bound by any settlement of the original named plaintiff. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff..."). This is a significant difference between a Rule 23 class and an opt-in class under the FLSA.

**CONCLUSION**

Based upon all of the foregoing, Defendants respectfully submit that Plaintiff's Motion for Preliminary Collective Action Certification should, in all respects, be denied.

23

Dated:   Columbus, Ohio
         April 7, 2010

Respectfully submitted,

//s//Michael G. Long
Michael G. Long, *pro hac vice*
Allen S. Kinzer, *pro hac vice*
Michael C. Griffaton, *pro hac vice*
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
P.O. Box 1008
Columbus, OH  43216-1008
(614) 464-6297 (telephone)
(614) 719-4829 (facsimile)
mglong@vorys.com
askinzer@vorys.com
mcgriffaton@vorys.com

Stephen F. Harmon
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0700
(212) 704-6111 (telephone)
(212) 704-5937 (facsimile)
stephen.harmon@troutmansanders.com

Attorneys for Defendants

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of April, 2010, I caused a copy of Defendants'

Memorandum in Opposition to Plaintiff's Motion for Preliminary Collective Action Certification

to be served via the Court's electronic filing system upon the following:

Anthony Carabba, Jr. (AC 1487)
Carabba Locke LLP
100 William Street
New York, NY 10038

Attorneys for Plaintiff

//s//Michael C. Griffaton
Michael C. Griffaton

25