Anthony Carabba, Jr. (AC 1487)
Carabba Locke LLP
100 William Street
New York, New York 10038
(212) 430-6400

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
FREDDA MALENA, on behalf of herself and
all others similarly situated,

                       Plaintiff,

        -against-

VICTORIA'S SECRET DIRECT, LLC, VICTORIA'S
SECRET DIRECT NEW YORK, LLC, VICTORIA'S
SECRET DIRECT MEDIA, INC., VICTORIA'S
SECRET STORES, LLC, VICTORIA'S SECRET
STORES BRAND MANAGEMENT, INC., LIMITED
BRANDS, INC., LIMITED BRANDS DIRECT
MEDIA PRODUCTION, INC. and ANN O'MALLEY,

                      Defendants.
-------------------------------------------------------------------X

09 Civ. 5849 (WHP)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

CARABBA LOCKE LLP
100 William Street
New York, New York 10038
(212) 430-6400

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT..................................................................1

STATEMENT OF FACTS....................................................................3

    Plaintiff and the Executive Assistants work overtime hours but are not paid.............4

    Plaintiff and the Executive Assistants perform secretarial/clerical tasks,
not exempt tasks...........................................................................4

    Defendants' Executive Assistant declarations support Plaintiff's position.................6

ARGUMENT................................................................................7

    I.    SUMMARY JUDGMENT ON THE PORTAL-TO-PORTAL DEFENSE
IS FACTUALLY AND LEGALLY IMPROPER.......................................7

        A.  The Summary Judgment Standard;
An Employee's Job Duties are a Question of Fact.......................................7

        B.  The FLSA Exemptions Must be Narrowly Construed;
The Employer Bears the Burden of Establishing the Exemption.....................8

        C.  The Portal Act Defense is Inapplicable as a Matter of Law............................8

            a.  The DOL audit is not a "ruling" within the meaning of the
Portal Act.....................................................................10

            b.  The DOL audit and other information Defendants relied upon
do not establish exempt status; Defendants cannot establish
reliance or good faith..........................................................12

                i.   The DOL Audit is inapplicable to the defense...................................12

                ii.  The FLSA and its regulations, etc., support Plaintiff's Position..........14

    II.   IN THE ALTERNATIVE, DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT SHOULD BE DENIED AS PLAINTIFF
HAS NOT HAD AN OPPORTUNITY TO DEVELOP
THE RECORD....................................................................21

A.      The Legal Standard.................................................................................21

B.      Plaintiff's Counsel's Affidavit Satisfies the Requirements of Rule 56(f)..........24

CONCLUSION.............................................................................................................25

# TABLE OF CASES

Page(s)

Alali v. DeBara,
    07-CV-2916 (CS), 2008 U.S. Dist. LEXIS 86760
    (S.D.N.Y. Oct. 24, 2008)........................................................ 22

Astudillo v. U.S. News & World Report,
    2004 U.S. Dist. LEXIS 18685
    (S.D.N.Y. Sept. 17, 2004) (Pauley, J.)..................................7

Chenensky v. New York Life Insurance Co.,
    2009 U.S. Dist. LEXIS 119549
    (S.D.N.Y. Dec. 22, 2009) (Pauley, J.)...................................8

Cusumano v. Maquipan International, Inc.,
    390 F. Supp.2d 1216 (M.D. Fla. 2005)................................11

Damassia v. Duane Reade, Inc.,
    04 Civ. 8819 (GEL), 2005 U.S. Dist. LEXIS 9768
    (S.D.N.Y. May 20, 2005)......................................................24

EEOC v. The Home Insurance Co.,
    672 F.2d 252 (2d Cir. 1982)..................................9, 14, 21

Hellstrom v. U.S. Dep't of Veterans Affairs,
    201 F.3d 94 (2d Cir. 2000)....................................................23

Kuebel v. Black & Decker,
2009 WL 1401694 (W.D.N.Y 2009)........................................21

McLaughlin v. Quan,
    1988 WL 62595 (D. Colo. June 17, 1988)........................11

Meloff v. New York Life Ins. Co.,
    51 F.3d 372 (2d Cir. 1995)..................................................22

Merrill Iron & Steel, Inc. v. Yonkers Contracting Co., Inc.,
    2006 U.S. Dist. LEXIS 66625
    (S.D.N.Y. Sept. 2006) (Pauley, J.)........................................7

Murphy v. Miller Brewing Co.,
    307 F. Supp. 829 (E.D. Wis. 1969)...................................................................11

Reiseck v. Universal Communications of Miami, Inc.,
    591 F.3d 101 (2d Cir. 2010).............................................................................8

Sanders v. Quikstak, Inc.,
    889 F. Supp 128 (S.D.N.Y. 1995).....................................................................22

Sexton v. Franklin First Financial, Ltd.,
    08-CV-04950 (JFB) (ARL), 2009 U.S. Dist. LEXIS 50526
    (E.D.N.Y. June 16, 2009)................................................................................23

Spring v. Washington Glass Co.,
    153 F. Supp. 312 (W.D. Pa. 1957)....................................................................11

U.S. v. Stocks Lincoln-Mercury, Inc.,
    307 F.2d 266 (10th Cir. 1962)..........................................................................11

Whalen v. J.P. Morgan Chase & Co.,
    587 F.3d 529 (2d Cir. 2009).............................................................................8

## PRELIMINARY STATEMENT

Plaintiff Fredda Malena respectfully submits this memorandum of law in opposition to Defendants' motion for summary judgment which seeks, prior to the close of discovery and before depositions, dismissal of her individual, collective and class claims under the Fair Labor Standards Act and New York State Labor Law.

Defendants assert that under the Portal-to-Portal Act they are completely insulated from liability for their decision to deny Plaintiff and their many other Executive Assistants overtime pay, because their denial decision was made upon the "advice" of counsel and was pursuant to a Department of Labor audit that, they claim, found the Executive Assistant position was properly classified as exempt. The motion has three fundamentally fatal flaws. It is legally incorrect, it is factually incorrect and, because it was made before the discovery close, it is premature at best.

In terms of the law, Defendants cannot meet their burden of establishing a Portal Act defense because they cannot point to any Department of Labor "ruling" -- within the meaning of the Portal Act -- that establishes the non-exempt status of the employees at issue. The DOL audit they heavily rely upon was performed by a Labor Department investigator and not by the Wage and Hour Administrator or other high level DOL official, which is required under the Portal Act to establish the defense. Moreover, Defendants' claim that they are cloaked from liability because their counsel concluded that the FLSA, its regulations, and DOL opinion letters show that the Executive Assistants are exempt, is nonsensical. First, the regulations and opinion letters Defendants cite actually support Plaintiff's claim that the Executive Assistants were not exempt by demonstrating that unless an employee exercised "discretion and independent judgment" on "matters of significance," she must receive overtime pay. In any event, the Second Circuit has

1

succinctly explained (and logic dictates), that the Portal Act does not permit an employer "to be his own judge of whether he has been guilty of a violation."

In terms of the facts, Defendants fare no better. The DOL audit upon which they rely does not conclude that Defendants' Executive Assistant *position* is exempt from overtime. The audit refers, in a short, six-sentence passage, to a single Executive Assistant and that particular employee's job duties. Based on those duties (which Plaintiff and the other Executive Assistants did not share), the investigator found that the particular employee was exempt. That a single employee may have claimed to an investigator that she had certain exempt job duties does not eliminate Plaintiff's and other Executive Assistants' statutory right to overtime pay.

Finally, Defendants' motion is not premised on the theory that there are no issues of material fact in terms of Plaintiff's and Defendants' view of the Executive Assistants' job duties. Rather, Defendants wholly ignore Plaintiff's factual allegations that she and the other Executive Assistants are non-exempt because their primary duty did not include the exercise discretion and independent judgment on matters of significance. To support their contrary position, they submit numerous declarations from current Executive Assistants purporting to show that they do exercise the requisite discretion/independent judgment on matters of significance. Those self-serving declarations do not save the day, however, as the employees' claims that they maintained their boss' calendar, scheduled meetings, checked on conference room availability, called to reserve the corporate jet, made hotel reservations, and deleted "junk email" from the boss' in-box fall far short of constituting exempt work. Indeed, if this constituted exempt work, virtually every employee charged with keeping a calendar and scheduling meetings would be exempt from overtime (meaning virtually every executive/administrative assistant working for every executive), leaving the detailed regulations governing this issue completely superfluous. At best, the

declarations reveal fundamental questions of fact as to the Executive Assistants' job duties, their level of authority, and whether they made decisions on matters of significance.

In sum, Defendants have done nothing to disprove, or even contradict, Plaintiff's specific allegations that her job duties consisted of making photocopies, answering phones, taking lunch orders, getting coffee, and doing such menial tasks as waiting for the cable guy at her boss' apartment or picking up her boss' Rolex watch from the repair shop.  Because Plaintiff alleges that based on her personal knowledge she and other Executive Assistants performed similar job functions, that other Executive Assistants did not exercise the level of independent discretion that they now claim in their declarations, and because Defendants' own job descriptions support the Plaintiff in showing that the Executive Assistants performed non-exempt work, Defendants' motion should be denied with prejudice.

## STATEMENT OF FACTS

Plaintiff was employed as an Executive Assistant from November 2006 through February 2009.  See Affidavit of Fredda Malena ("Malena Aff."), ¶ 2, attached to the accompanying Declaration of Anthony Carabba, Jr. in Opposition to Defendant's Motion for Partial Summary Judgment ("Carabba Decl.") at Tab 1.  Plaintiff was first directly employed by Defendant Victoria's Secret Direct Media, Inc. (now known as Limited Brands Direct Media Production, Inc., also named as a Defendant) ("VDM") and later by Defendant Victoria's Secret Stores Brand Management, Inc. ("VBM").  See Malena Aff. ¶ 2; Answer ¶ 1, Carabba Decl. Tab 2.  In addition to the entities by which she was directly employed, as set forth in detail below, Plaintiff was subject to the same policies regarding wages and overtime as Executive Assistants employed by each of the other corporate Defendants.  The corporate Defendants are collectively referred to herein as "Defendants."

3

***Plaintiff and the Executive Assistants work overtime hours but are not paid***

There is no dispute that Plaintiff, as well as Defendants' other Executive Assistants, worked well in excess of 40 hours per week without receiving overtime pay. Complaint ¶ 22, Carabba Decl. Tab 3; Malena Aff. ¶¶ 3-5; Defendants' Local Rule 56.1 Statement ¶ 17. The Executive Assistants who submitted declarations in support of Defendants' motion confirm that they worked in excess of 40 hours per week and did not receive overtime pay. See, e.g., Declaration of Deborah Belleau, Exhibit B to the Affidavit of Michael Griffaton, at ¶¶ 3-4 ("I worked for an average of 50 hours per week" and "I was never paid overtime.")

***Plaintiff and the Executive Assistants perform secretarial/clerical tasks, not exempt tasks***

Despite being classified as exempt, the Defendants' Executive Assistants performed duties inconsistent with exempt status because their "primary duty" did not include the requisite exercise of discretion over matters of significance. Complaint ¶¶ 35, 42; Malena Aff. ¶¶ 6-7. Specifically, Plaintiff's job duties and those of the other Executive Assistants included scheduling meetings as directed by their superiors, answering phones, sorting mail, maintaining calendars, calling for messenger pick-ups, making travel arrangements per their superiors' requests, typing, maintaining supplies and making copies. Complaint ¶ 42, Malena Aff. ¶¶ 6-8. Plaintiff's job duties did not require, nor did she exercise, discretion over matters of significance. Malena Aff. ¶ 6 ("I need to obtain [my boss' approval before doing anything but the most menial of tasks.").

Defendants' own documents confirm that the Executive Assistants did not exercise discretion over matters of significance. One critical document -- the Executive Assistant job description -- states that these employees did the following clerical tasks:

(1)    "Open/sort mail for EVP;"
(2)    "Maintain calendar for EVP and VP. Communicate calendar changes in a timely manner. Stay updated on EVP and VP priorities on a daily basis;"

(3)   "Schedule touch bases and staff meetings for EVP and VP with direct reports;"

(4)   "Print out all calendars and keep binder up to date;"

(5)   "Provide current agendas and necessary materials to EVP and team prior to meetings.  If there are to be pre-reads doc[ument]s need to be brought to EVP[s] attention day before;"

(6)   "Keep EVP and team informed of time/date/location changes of meetings;"

(7)   "Arrange messengers/Fed-ex, etc. as needed;"

(8)   "Set up travel arrangements for EVP and VP;"

(9)   "Typing, presentation, preparation and faxing correspondence as needed;"

(9)   "Screen calls for EVP;"

(10)  "Create/maintain filing system for EVP and VP;"

(11)  "Input PTO for EVP into access.  Notify EVP of all team PTO;"

(12)  "Maintain supplies for Brand Creative and NYC stores Departments in cabinet.  Periodically check supplies in Creative Conference room; keep stocked;"

(13)  "Manage the on-boarding schedule of new hires within the Brand Creative department (SRF, computer, phone, etc.);"

(15)  "Periodically provide support to Columbus executives visiting the [New York Office] (typing, copying, cars, etc.).

See "Position Profile," Carabba Decl. Tab 4.

The Position Profile itself summarizes Executive Assistants' job functions.  It states that the "essential functions" of the job are the "ability to read, ability and willingness to do light lifting [and the] ability to communicate both verbally and in writing."  Id. (emphasis added).  Further, in what appears to be a more generalized position description for all Executive Assistants produced by Defendants, the responsibilities listed include "management of the executive's calendar and extensive travel arrangements," "organization and management of communications to executives" and "tak[ing] meeting notes/minutes, draft[ing] emails and other communications for executive's review."  See Executive Assistant position description, Carabba Decl. Tab 5.  Defendants produced six "Job Analysis Questionnaires" filled out by certain Executive Assistants.  In response to a question asking for the job duties performed most frequently (i.e. "each day"), all six listed "scheduling" or "calendar management" or some other variation of the idea that maintaining their boss's schedule took up most of their time.  See Carabba Decl. Tab 6.  This

concept was echoed in Executive Assistant declarations submitted in connection with the motion. Scheduling meetings -- even important ones -- is clerical in nature and is not an exempt job duty.

***Defendants' Executive Assistant declarations support Plaintiff's position***

Defendants' motion does not address Plaintiff's allegations concerning the job duties of the Executive Assistants, nor does it address the above-referenced personnel documents. Instead, they rely on declarations from numerous Executive Assistants (almost all are current employees) to purportedly show that they perform exempt work. They do not.

The declarations are repetitive, with many of the same paragraphs, including those pertaining to job duties, repeated over and over again. On the whole, the declarations carry the same essential themes: Victoria's Secret's executives are very busy people, they have lots of meetings, their calendars are very important, and the Executive Assistants are primarily responsible for handling calendar matters (making sure the executive is where he/she is supposed to be), although they also perform such other tasks as processing expenses, assembling binders in advance of meetings, deleting "junk mail" from the executive's in-box, making hotel reservations and reserving spots on the corporate jet, and, for some, getting lunch for their boss. While these all may be deemed "important" functions for "important" people, it is not exempt work.

The Affidavit of Fredda Malena, submitted in opposition to Defendants' motion, establishes that there are at the very least material questions of fact at issue. In her Affidavit, she details her work responsibilities and duties, which included calendaring, sending faxes, making travel arrangements, making photocopies, shredding documents, running errands, as well as performing various other clerical and personal tasks for her boss. Malena Aff. at 6. She explained that her job duties were rote and mundane and that she needed approval from her boss for virtually everything she did. She explained that based on her own personal knowledge, her

job duties were very similar to those of the other Executive Assistants and that the other Executive Assistants performed the same clerical-based tasks that she did.

In terms of the Executive Assistant declarations submitted in connection with Defendants' motion, they create more issues of fact than they eliminate.  Setting aside that they describe non-exempt work, Plaintiff has first hand knowledge to dispute their contents.  For example, Plaintiff worked closely with various of the Assistants who submitted declarations.  For example, she recalls contacting Tamara Reyes on numerous occasions (about 40 times) to schedule a meeting between her boss and Ms. Reyes' boss.  On each of those occasions, Ms. Reyes had to check with her own boss before scheduling the meeting.  She had the same experience with numerous other Executive Assistants as well.  Malena Aff. at 10-11.

## ARGUMENT

## I.  SUMMARY JUDGMENT ON THE PORTAL-TO-PORTAL DEFENSE IS FACTUALLY AND LEGALLY IMPROPER

### A.   *The Summary Judgment Standard; An Employee's Job Duties are a Question of Fact*

The drastic remedy of summary judgment is available only if the moving party prevails on its burden of proving that no genuine issues of material fact exist.  See, e.g., Astudillo v. U.S. News & World Report, 2004 U.S. Dist. LEXIS 18685 (S.D.N.Y. Sept. 17, 2004) (Pauley, J.) (setting forth summary judgment standard and denying employer's motion because it failed to establish plaintiff performed only exempt work under FLSA).  Moreover, as this Court has held, the grant of summary judgment is "inappropriate" where a defendant seeks such relief prior to the close of discovery, relying on its own "self-serving" affidavit.  Merrill Iron & Steel, Inc. v. Yonkers Contracting Co., Inc., 2006 U.S. Dist. LEXIS 66625 (S.D.N.Y. Sept. 2006) (Pauley, J.).  Particularly germane to this case, this Court has also held that the "question of how an

employee spends his time working" is an <u>issue of fact under the FLSA</u>. <u>Chenensky v. New York Life Insurance Co.</u>, 2009 U.S. Dist. LEXIS 119549 (S.D.N.Y. Dec. 22, 2009) (Pauley, J.).

### B. The FLSA Exemptions Must be Narrowly Construed; The Employer Bears the Burden of Establishing the Exemption

As the Second Circuit recently reiterated, "[b]ecause the FLSA is a remedial law, we must narrowly construe its exemptions. Furthermore, the employer invoking the exemption bears the burden of proving that its employees fall within the exemption." <u>Reiseck v. Universal Communications of Miami, Inc.</u>, 591 F.3d 101, 104 (2d Cir. 2010) (reversing district court's grant of summary judgment; employer did not establish exemption for administrative employee) (footnote and citations omitted). As this Court explained it, "exemptions to the FLSA are narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." <u>Chenensky v. New York Life Insurance Co.</u>, 2009 U.S. Dist. LEXIS 119549 at *12 (S.D.N.Y. Dec. 22, 2009) (Pauley, J.). <u>See</u> <u>also</u> <u>Whalen v. J.P. Morgan Chase & Co.</u>, 587 F.3d 529, 531 (2d Cir. 2009) (holding that FLSA exemptions be narrowly construed; reversing grant of summary judgment to employer where it failed to establish employee was covered by administrative exemption).

### C.   The Portal Act Defense is Inapplicable as a Matter of Law

Defendants claim that their Portal Act affirmative defense insulates them from all overtime liability, because they relied on a DOL finding that the Executive Assistant position was exempt and because they relied on the advice of counsel who, after interpreting the FLSA and its regulations, as well as DOL opinion letters and operations handbook, found that no overtime wages were owed. This claim is hopelessly flawed. The Portal Act provides that:

no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA]...if he *pleads and proves* that the act or omission complained of was in *good faith* in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, *of the agency of the United States* specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged.   Such a defense, if established, shall be a bar to the action or proceeding...

29 U.S.C. § 259(a) (emphasis added).   The Portal Act is intended only to "protect employers from liability if they took certain actions on the basis of an interpretation of the law by a government agency, even if that agency's interpretation later turned out to be wrong." EEOC v. The Home Insurance Co., 672 F.2d 252, 263 (2d Cir. 1982).

To prevail on this defense, an employer must plead and prove three elements:

(i)     that it acted in reliance on a ruling of the Wage-Hour Administrator;

(ii)    that its action was in conformance with a ruling of the Administrator; and,

(iii)   that it acted in good faith.

Id. at 262.   Both Congress and the Second Circuit have recognized the limited nature of the Portal Act defense and its inapplicability for summary disposition.   As explained in the FLSA's regulations, "the requirements of the [Portal Act] as to pleading and proof emphasize the continuing recognition by congress of the remedial nature of the Fair Labor Standards Act and of the need for safeguarding the protection which Congress intended to afford employees.   29 CFR 790.13, n 93.   As the Second Circuit explained in a case involving the Portal Act defense, "summary judgment is rarely appropriate where the moving party's state of mind is a material issue" and the "good faith" component of the Act requires a showing of state of mind.   Home Insurance Co., 672 F.2d at 257, 265-66.   As the DOL regulations explain, the good faith component of the Portal Act defense is subjective in nature:   "Good faith requires that the

employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry." 29 CFR 790.15. Defendants cannot establish any of the three elements.

We note Defendants' recognition (at page 19 of their brief) that no case has applied the Portal Act defense to a New York State Law overtime claim, and that the State Law contains no "good faith" defense at all. As such, the Portal Act defense is inapplicable to the State Law claims as a matter of law. Even if it did apply, the defense would fail with respect to the State Law claims for the same reasons that it fails with respect to the FLSA claims.

a.   The DOL audit is not a "ruling" within the meaning of the Portal Act

Defendants' motion focuses heavily on a DOL audit of the Victoria Secret Stores home office in Ohio. The audit covered the entity of "Victoria Secret Stores, Inc." only and did not include any employee, such as Plaintiff, working in New York. See Department of Labor Audit, at pages hand marked 1 & 2, Carabba Decl. at Tab 7. Even as expressly limited, this audit cannot be used to establish a Portal Act defense because it does not constitute an agency "ruling" within the meaning of the Portal Act. Under 29 CFR 790.19(c), a Portal Act defense is "restricted to those situations where the employer can show" that the ruling or enforcement policy upon which it relied was "actually that of the authority vested with the power to issue or adopt regulations, orders, rulings, approvals, interpretations, administrative practices or enforcement policies of a final nature as the official act or policy of the agency. *Statements made by other officials or employees are not regulations, orders, rulings, approvals, interpretations, administrative practices or enforcement policies* of the agency within the meaning of sections 9 and 10." (emphasis added).

As the Tenth Circuit held, if the Portal Act is to be given "uniform construction" then the "agency contemplated" in issuing a ruling "is the official vested with primary or final authority

to administer the provisions of the particular Act in question, not a minor official in such agency." U.S. v. Stocks Lincoln-Mercury, Inc., 307 F.2d 266, 271 (10th Cir. 1962). As the court elaborated, the regulations, interpretations and enforcement relied upon "must be those of an 'agency' and not of an individual officer or employee of the agency. Thus if inspector A tells the employer that the agency interpretation is that the employer is not subject to the Act, the employer is not relieved from liability, despite his reliance in good faith on such interpretation, unless it is in fact the interpretation of the agency." Id. (quotation omitted). Applying the Portal Act's requirements to the facts, the Court of Appeals concluded that a "Field Office Supervisor" did not "have the authority to issue an authoritative ruling or decision. . . and was not an 'agency of the United States' specified in § 10(b)(2)." Id. at 272.

Numerous other courts have reached the same conclusion. For example, in Cusumano v. Maquipan International, Inc., 390 F. Supp.2d 1216 (M.D. Fla. 2005), the district court flatly rejected the employer's Portal Act defense where, as here, it relied on finding of a Wage and Hour Investigator that certain employees were exempt, and not a written administrative interpretation from the Administrator of the Wage and Hour Division of the Department of Labor. The court held that correspondence from a DOL Investigator is "not sufficient to establish a good faith defense" under the Portal Act. Id. at *4. See also McLaughlin v. Quan, 1988 WL 62595 (D. Colo. June 17, 1988) (a finding by a DOL investigator is insufficient to establish Portal Act defense); Murphy v. Miller Brewing Co., 307 F. Supp. 829 (E.D. Wis. 1969) (same); Spring v. Washington Glass Co., 153 F. Supp. 312 (W.D. Pa. 1957) (finding of a DOL supervisor could not give rise to Portal Act defense; even if it could, the court would find against employer because it did not rely on DOL finding, rather it "actually relied on the advice of its counsel and its unalterable conviction" that the employees at issue were exempt).

11

Here, the documents produced by Defendants show that the audit was performed by Becky Dixon, a DOL "investigator." Audit at p. 12. The audit itself, which is redacted, was signed by a "WHI" (presumably a Wage and Hour Investigator). Audit at p. 2. The signature line next to the "Reviewed By" entry is blank. Id. Because the audit was not a ruling or interpretation by Wage Hour Administrator, it cannot be used to support a Portal Act defense.

b.   The DOL audit and other information Defendants relied upon
     do not establish exempt status; Defendants cannot establish reliance or good faith

i.   The DOL Audit is inapplicable to the defense

Defendants assert that the DOL audit found "VSS's Executive Assistants were properly classified as exempt." Defendants' Memorandum of Law at p. 16. Not true. While the audit is noteworthy for a number of things – including an assertion that VSS committed 13 "Total Violations Under FLSA" by unlawfully classifying employees as exempt – nowhere does it state that the "Executive Assistants are exempt." (We note that Defendants do not explain how, with a "team" of lawyers having the self-proclaimed wealth of experience in employment law described in the Douglas L. Williams declaration, any employees could have been deemed misclassified. Nor do they explain why, if they were wrong about classifying various other employees as exempt, they must be correct in how they classified Plaintiff).

The audit barely addresses Executive Assistants. The audit devotes six sentences to the job duties of a single Executive Assistant, finding that she was exempt from overtime based on her specific job duties. Audit at 6. That the audit dealt with a single Assistant is clear from the audit itself, as certain parts of the audit reference numerous employees in a particular job classification ("[t]here are six employees within [the] job title"), but it makes no reference to

more than one Assistant.  Further, while VSS provided job descriptions for various positions, no description for the Executive Assistant position was asked for nor provided.  See Audit at 14.

In terms of the job duties for that particular Assistant, the audit states that she, among other things, "oversees that deadlines are met" and "delegates projects that need to be done." Audit at 6.  As evidenced from her Affidavit, Plaintiff had neither of these job duties.  In fact, a review of Defendants' Executive Assistant declarations reveals that they do not claim that they "oversee that deadlines are met" and that they "delegate projects that need to be done."

This is significant.  As set forth under 29 CFR 790.14, where the agency makes a particular finding based on a particular activities performed – "and made no general statement" regarding the status under the Act of employees performing other work, the employer cannot invoke the defense regarding "any other activities of a different nature performed by his employees, because it was not an opinion concerning such activities. . . ."

Moreover, it appears from Defendants' motion papers that Peggy Poulton was the Executive Assistant referenced in the DOL audit.  See Declaration of Peggy Poulton, attached as Exhibit P to the Michael Griffaton Affidavit, at ¶ 4 ("In 2005, I was interviewed by a representative of the United States Department of Labor" as part of its "investigation" on "whether certain positions . . . were or were not properly characterized as exempt").  In her declaration, Poulton does not claim that she "oversaw" that deadlines were met or that she "delegates projects that need to be done."

Two final points about the audit.  As to those employees deemed "exempt," the investigator included a significant caveat:  "some are in jobs that have gray area job duties.  Jobs are constantly changing with team approaches.  The company is growing, particularly considering that they have only been in business for ten years." Audit at p. 5.  Second, Defendant could not

have "relied" on the audit (or even the other information) because they classified the Administrative Assistants as exempt <u>prior</u> to the audit and prior to reviewing the other information.  In light of the foregoing issues, and the limited nature of the audit, Defendants establish the reliance and good faith elements of the Portal Act defense.

ii.    The FLSA and its regulations, etc., support Plaintiff's Position

Recognizing that the audit does not help them, Defendants also claim that they reviewed certain other information (the FLSA, regulations, opinion letters, etc.), they concluded that the Executive Assistants are exempt, and they are therefore absolved from liability.  The fallacy in this theory is that the Second Circuit has already held that the Portal Act is "not intended to 'make each employer his own judge of whether or not he has been guilty of a violation.'"  <u>Home Insurance</u>, 672 F.2d at 265 (<i>quoting</i> Message of President Truman to Accompany the Portal-to-Portal Act of 1947).  This should end the inquiry.

Even if the Court wishes to review the information upon which Defendants allegedly relied, the answer would remain the same:  the Executive Assistants are not exempt.  First, Defendants rely heavily on the Department of Labor's Field Operations Handbook, explaining at page 13 of their brief that Handbook "specifically states" particular language which they set off in a block quote.  First, the cited quote appears nowhere in the Handbook.  In any event, the section of the Handbook upon which they rely is taken from Chapter 22, which deals with Executive, Administrative, Professional, and Outside Salesperson Exemptions.   According to the DOL's cover page to that Handbook, "Chapter 22 is currently being revised to reflect the updated regulation."  <u>See</u> Cover Page, Carabba Decl. at Tab 8.  The cover page indicates that for "compliance assistance materials," the public should refer to the DOL's "new" compliance pages on its website, developed as part of the 2004 amendments to the FLSA regulations.  According to

14

the DOL, the new regulations "are *more protective* of workers' overtime rights, because they strengthen the 'discretion and independent judgment' standard by adding the requirement that the discretion be exercised 'with respect to matters of significance.'   See DOL's *Frequently Asked Questions, "Overtime for the 21ˢᵗ Century Workforce*, at No. 10 (emphasis in original), Carabba Dec., Tab 9.  The Handbook page upon which Defendants rely was, as evident from the date at the top of that page, written in 1972.  Moreover, the Handbook is not an official pronouncement, as the cover page states that the "Federal Register and the Code of Federal Regulations remain the official resources for regulatory information published by the DOL."

Turning to the new DOL regulations, they are highly instructive and revealing the spurious nature of Defendants' claims.   Under 29 CFR § 541.202(a), a section of the regulations that Defendants do not quote, it is explained that:  "To qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance."   That section also explains that the "term 'matters of significance' refers to the *level of importance or consequence of the work performed*." (emphasis added).   The DOL's regulations further provide, by way of example, that "[a]n executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance."  29 C.F.R. § 541.203(d) (emphasis added).

Under 29 CFR § 541.202(b), another section Defendants fail to quote, the regulations explain that the phrase "discretion and independent judgment" must be "applied in the light of all the facts involved in the particular employment situation in which the question arises.  Factors to

consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to":

- "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices";

- "whether the employee carries out major assignments in conducting the operations of the business";

- "whether the employee performs work that effects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business";

- "whether the employee has authority to commit the employer in matters that have significant financial impact";

- "whether the employee has authority to waive or deviate from established policies and procedures without prior approval";

- "whether the employee has authority to negotiate and bind the company on significant matters";

- "whether the employee provides consultation or expert advice to management";

- "whether the employee is involved in planning long- or short-term business objectives";

- "whether the employee investigates and resolves matters of significance on behalf of management"; and,

- "whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances" (emphasis added).

Finally, 29 CFR § 541.202(e), another section Defendants fail to quote, provides that *"[t]he exercise of independent judgment also does not include clerical or secretarial work* . . . *or performing other mechanical, repetitive, recurrent or routine work."* (emphasis added).

A review of Defendants' own declarations show that their Executive Assistants fall far short of meeting any of the requirements under 29 CFR § 541.202(b) and, to the contrary, perform tasks of a clerical/secretarial nature within the meaning of 29 CFR § 541.202(e). Using

the declaration of Kimberly Garavuso as an example (see Exhibit G to the Griffaton Declaration), she claims that she spends "80% of my working time attending to my bosses' calendars." Id. at ¶ 7. She claims that it is "critical that I keep their calendars current and accurate" because "being in the right place, at the right time, with the correct group of people, with the correct materials makes the difference between her being able to do her job effectively or being unable to do it effectively." She claims she spends the bulk of her time handling "meeting requests" and "resolving scheduling conflicts on their calendars." Id.

While having a complete and accurate calendar is important for an executive, Ms. Garavuso's role in keeping that calendar (such as by entering meetings in outlook) is not a "matter of significance" to the Victoria Secret enterprise. Moreover, resolving "conflicting" meeting requests, even to the extent Ms. Garavuso, rather than her boss, is charged with that responsibility, does not rise to the level of importance, significance or consequence necessary to be deemed exempt work. (As set forth in Plaintiff's Affidavit at ¶¶ 9-17, the Executive Assistants did not schedule meetings on their own.) Whether a meeting is scheduled for 12:00 pm or 1:30 pm, or is rescheduled to the next morning, is secretarial in nature and per se non exempt work. If she schedules a meeting for her boss for the open slot at 12:00 pm instead of the one at 3:00 pm, or schedules a meeting with Jim first and then Mary, and not vice versa, what is the consequence? Defendants do not say exactly, but common sense (and the Malena Aff. at ¶ 15) dictates that her boss would tell her to switch the meeting. (Defendants' implicit assertion that a top officer at Victoria's Secret would attend an unnecessary meeting because her assistant exercised her discretion to schedule it, is silly). Based on what they have the authority to do, the Assistants simply do not "effect business operations to a substantial degree" or meet any of the other requirements under 29 CFR § 541.202(b).

Her other job functions are similarly non-exempt in nature.  For example, she claims she has the "authority and discretion" to delete "junk email" from her bosses in-box.  She also claims to have authority to "flag" certain emails for review or print them out.  Id. at 13.  She claims she makes travel "arrangements" (id. at 12), she "compiles materials" (id. at 10), and she picks up lunch for her boss (id. at 16).  While those tasks may be helpful to an executive, and without denigrating the Assistants' work, they are clerical/secretarial in nature and are a far cry from constituting duties of significance or consequence in the sense that if she prints out one too many emails, or deletes a piece of spam that her boss wanted to see, or picked hotel A instead of hotel B, or JetBlue over Continental, it would not impact business operations to a "substantial degree."

Many of the Executive Assistant declarations are similar, and some nearly identical, to the Garavuso declaration.  For example, many of the declarations provide that the Executive Assistant performs the following secretarial/clerical tasks some of which we synthesize here:

- Spends the majority of their day attending to their boss' calendar and related issues. Deborah Belleau Declaration ¶ 7, Kendra Clanin Declaration ¶ 6; Alejandra Cambeiro Declaration ¶ 7.

- Makes travel arrangements for their boss.  Belleau Decl. ¶ 11; Cambeiro Decl. ¶ 10.

- Functions as a "gatekeeper" for their boss in that they determine the "priority" of meeting requests made of their boss, but they do not explain the type of requests made or the consequences of them not prioritizing them in the proper manner.  Belleau Decl. ¶ 10. Cambeiro Decl. ¶ 8.

- Has the authority to delete junk email or to print out important emails from their bosses in box. Tamara Reyes Declaration ¶ 10.

- Has developed his/her own filing system.  Donna Stroup Declaration ¶ 13.

- Sometimes get their boss lunch or runs personal errands for their boss.  Joan Rogan Declaration ¶ 16; Donna Kirk Declaration ¶ 20; Jamie Hall Declaration ¶ 18; Ahmina Graham Declaration ¶ 21; Cynthia Egan Declaration ¶ 6; Brenda Debolt Declaration ¶ 21; Janette Mccann Declaration ¶ 17; Lisa Mcclellan Declaration ¶ 5; Stroup Decl. ¶ 16.

- Processes expense requests for their boss and sends the request for accounting for approval. Cambeiro Decl. ¶ 11.

- Orders unspecified office supplies, but only if they are on an "approved core list." Molly Geben Sleben Declaration ¶ 13.

- Has the authority to interrupt their boss in a meeting if he received an important email or to interrupt their boss if an "important" call comes in. Reyes Decl. ¶ 9.

- Has access to information about salaries and performance reviews, and must keep that information confidential. Belleau Decl. ¶ 15; Cambeiro Decl. ¶ 12.

- Gathers and prints materials in advance of meetings, although the materials are not identified, the process is not explained, and the consequence of printing too much or too little is not revealed. Cambeiro Decl. ¶ 9.

- Organizes the materials on their bosses' desk. Reyes Decl. ¶ 9.

To shed more light on the exempt/non-exempt nature of these duties, it is helpful to review the DOL opinion letter dated October 26, 2006 upon which Defendants rely. See Mem. of Law at 13-14. Careful analysis of that Opinion reveals that it supports Plaintiff's position. The Opinion addresses the overtime eligibility of three different job titles -- an Executive Assistant and two classifications of Administrative Assistant. The DOL concluded that the Administrative Assistants were *non-exempt*, notwithstanding that they exercised far more discretion and independent judgment than the Executive Assistants here. One of the non-exempt employees was "basically in charge of the Union's administration" of the Union's "worker's compensation, disability, occupational injuries, and unemployment" programs. Opinion at p. 2. The assistant also "answers a large majority of the union members' questions independently, referring to state statutes and the collective bargaining agreement, and interfaces with top state officials to resolve problems" as well as "reviewing and making recommendations to the supervisor regarding twelve staff representatives' expenses, time sheets and leave requests . . . . Opinion at p. 2. Those types of duties (reviewing leave requests, doing research in terms of state statutes and bargaining

agreements to answer questions independently, and interacting with top state officials on behalf of the organization) are not present here.

The other administrative employee was also deemed non-exempt, notwithstanding that the employee wrote and developed the organization's quarterly newsletter, "conducted meetings in the absence of the supervisor," "chaired the [state's Quality Network] meetings and reported to the supervisor regarding the discussions," interacted with "state counterparts in designing a statewide Web site" and was "assigned special projects . . . that require 'research and preparing policies to be proposed for adoption'" without supervisory oversight, and preparing initial drafts of the departmental budget, creating flyers, and sitting on committees. Opinion at 3-4. In concluding that these employees are non-exempt, the DOL found their duties (as significant as they were) were "clerical" or "secretarial" in nature because they did not have the "authority to formulate, affect, interpret, or implement management policies," they did not "perform[] work that substantially effects business operations," they were not "involved in planning long-term or short term business objectives" and they did not "provide expert advice." Id. at 7-8.

In terms of the employee deemed exempt, the DOL relied on the fact that she performed such acts as negotiating contracts, reviewing staff time sheets, assisting with staff work assignments, interacting with members of the State and National political community in formulating responses to inquiries, editing speeches for the Union president, and processing retirement and compensation items. Id. at 1-2. The DOL explained that the employee "appears to perform some work involving a number of . . . administrative functions . . . including budgeting, purchasing, procurement, labor relations, public relations, and government relations." Id. at 6. Significantly, the DOL explained that *the employee's time spent "scheduling meetings" was non-exempt secretarial work,* but because that this function was "collateral" to her primary

duties, she was exempt. Id. at 7. The primary duties of the employees at issue here (scheduling meetings, etc.), as explained in the foregoing Opinion, are non-exempt clerical duties, rather than exempt duties such as "negotiating contracts" or "editing speeches" engaging in public relations on behalf of the organization.

In sum, published opinion letters and published regulations of the Wage-Hour Administrator may establish a Portal Act defense, but only if they give the employer guidance with respect to the employer's specific "proposed action." As the Second Circuit held in Home Insurance, when a published ruling effectively leaves to an employer to his own devices with respect to interpreting the Act, the employer cannot establish the "ruling" prong of the defense. 672 F.2d at 265. In cases where the defense is established, "the agency advice was specific and left no room for interpretation." Id. at 266. "But where the administrative interpretation is uninformative and leaves the employer to make its own reading of the precise requirements of the statute, the employer's honest, but unsuccessful, intention to obtain information does not relieve it of liability. In short, the Portal Act was not intended to allow an employer to insulate itself from liability for the consequences of its own improvident interpretation of the statute." Id.[1]

## II.   IN THE ALTERNATIVE, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS PLAINTIFF HAS NOT HAD AN OPPORTUNITY TO DEVELOP THE RECORD

### A.   The Legal Standard

---

[1] The only case that Defendants address with any depth, Kuebel v. Black & Decker, 2009 WL 1401694 (W.D.N.Y 2009), does not change the analysis. There, the court granted the employer's motion only after engaging in an extensive analysis of the wage issue presented and concluding that that the employer complied with the FLSA, the regulations, opinion letters and the and case law. The court "accepted" employer's counsel's audit results only because they were ultimately correct. As the Second Circuit has explained, this highlights the "jejunity of a Portal Act defense" because it "will be available only when the employer does not need it." Home Insurance, 672 F.2d at 265.

Defendants have moved for summary judgment despite that discovery is not complete -- in fact no depositions have been taken.   In the event that the Court finds that the foregoing arguments do not defeat the motion, Plaintiff requests that Defendants' motion be denied because Plaintiff has not yet deposed key witnesses concerning Defendants' Portal Act defense.

Fed. R. Civ. P. 56(f) states that when "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."   Courts in the Second Circuit have interpreted Rule 56(f) to require a party invoking it to show by affidavit "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts."   Sanders v. Quikstak, Inc., 889 F. Supp 128, 132 (S.D.N.Y. 1995) *quoting* Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).   See also Alali v. DeBara, 07-CV-2916 (CS), 2008 U.S. Dist. LEXIS 86760 at *22 (S.D.N.Y. Oct. 24, 2008) (same).

Alali is instructive in cases, such as here, where a party makes a motion for summary judgment before the close of discovery.   In that case, defendants moved for summary judgment prior to the close of discovery on plaintiff's retaliation claim under, *inter alia*, Title VII.   The court granted plaintiff's motion pursuant to Rule 56(f) and denied defendants' motion for summary judgment without prejudice.   In so doing, the court noted that "Fed. R. Civ. P. 56(f) provides, as interpreted by court opinions, that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had

the opportunity to take discovery and rebut the motion.  Accordingly, summary judgment should only be granted if <u>after discovery</u>, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.  The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment and must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment" (internal quotations and citations omitted; emphasis in original).  <u>See also</u> <u>Hellstrom v. U.S. Dep't of Veterans Affairs</u>, 201 F.3d 94, 97 (2d Cir. 2000) ("[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery").

In <u>Sexton v. Franklin First Financial, Ltd.</u>, 08-CV-04950 (JFB) (ARL), 2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009), a collective action arising under the FLSA for unpaid minimum wages and overtime, plaintiff moved for conditional certification as a collective action and, at approximately the same time, Defendants moved for partial summary judgment dismissing the claims of certain plaintiffs on statute of limitations grounds.  Plaintiffs opposed the motion pursuant to Fed. R. Civ. P. 56(f) by arguing that they believed that the doctrine of equitable tolling would rescue those plaintiffs' claims but that, because discovery was not yet complete, they had been unable to conduct discovery on that issue.  After noting that, as set forth above, "district courts should only grant summary judgment if <u>after discovery</u>, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," the court "conclude[d] that defendants' motion for summary judgment is premature and denie[d] it without prejudice to refilling at the close of discovery." <u>Id.</u>, 2009 U.S. Dist. LEXIS 50526 at *49-50, 57-58 (quotations omitted, emphasis in original).

Indeed, at least one court in this circuit has held that summary judgment is particularly inappropriate on a defense based on the Portal-to-Portal Act where discovery is not yet complete. In Damassia v. Duane Reade, Inc., 04 Civ. 8819 (GEL), 2005 U.S. Dist. LEXIS 9768 (S.D.N.Y. May 20, 2005), the plaintiffs claimed that they were denied overtime compensation in violation of the FLSA. Defendants moved to dismiss or for partial summary judgment based on a Portal Act defense under 29 U.S.C. § 259. In denying the motion, the court first noted that the defendant bore the burden of proof on its Portal Act defense. The court also noted, that "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." Damassia, 2005 U.S. Dist. LEXIS 9768 at *8. The court held that "[t]here is no way of knowing what discovery from either [defendant] or the Department of Labor or both would reveal about these matters. Perhaps, on a full record, [defendant] will be able to demonstrate that it relied in good faith on some sort of 'order, ruling [or] approval' of the Department, as required to establish a defense under 259. At the very least, the [defendant's] declaration and the attached letters raise more factual questions than they answer, and provide fertile ground for further discovery by plaintiffs. The present record is manifestly inadequate for summary judgment." Id., 2005 U.S. Dist. LEXIS 9768 at *10-11. Here, because Defendants bear the burden of establishing their Portal Act defense, and because Plaintiff has not completed discovery, summary judgment is inappropriate.

**B.    *Plaintiff's Counsel's Affidavit Satisfies the Requirements of Rule 56(f)***

As set forth above, in order to grant relief pursuant to Rule 56(f), courts in this circuit require that the affidavit state: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Alali, 2008 U.S. Dist. LEXIS 86760 at *22. Here, the accompanying affidavit of Anthony Carabba, Jr. meets these

requirements.  We note that in Sexton, the court relied upon counsel's affidavit in denying a motion for summary judgment and that affidavit contained far less information that what is contained in the Carabba Affidavit.  See Sexton, 2009 U.S. Dist. LEXIS at *52-53 (quoting from counsel's affidavit that "[b]ecause no discovery has been conducted on these issues and because of the short time since the defendants submitted their motion, plaintiffs are unable to present essential facts upon which to base their opposition to defendants' motion. Specifically, plaintiffs have been unable to depose the defendants' representatives who submitted affidavits in support of their motion and have not obtained any discovery related to their motion.  Plaintiffs request that they be entitled to conduct discovery on the issues relating to the tolling of the statute of limitations, including being granted leave to depose the defendants' representatives who submitted affidavits in support of their motion for partial summary judgment after receiving responses to plaintiffs' discovery requests").  Even a cursory review of the Carabba Affidavit establishes that it by far exceeds the showing made by the plaintiff in Sexton.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion for partial summary judgment in its entirety or, in the alternative that it deny the motion without prejudice so that Plaintiff can complete discovery, and that Plaintiff be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
    April 7, 2010

                                  Respectfully submitted,
                                  CARABBA LOCKE LLP

                                  By:_____
                                      Anthony Carabba, Jr. (AC 1487)

                                  100 William Street
                                  New York, New York 10038
                                  (212) 430-6400
                                  *Attorneys for Plaintiff*