Anthony Carabba, Jr. (AC 1487)
Carabba Locke LLP
100 William Street
New York, New York 10038
(212) 430-6400

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
FREDDA MALENA, on behalf of herself and
all others similarly situated,

                        Plaintiff,

            -against-

VICTORIA'S SECRET DIRECT, LLC, VICTORIA'S
SECRET DIRECT NEW YORK, LLC, VICTORIA'S
SECRET DIRECT MEDIA, INC., VICTORIA'S
SECRET STORES, LLC, VICTORIA'S SECRET
STORES BRAND MANAGEMENT, INC., LIMITED
BRANDS, INC., LIMITED BRANDS DIRECT
MEDIA PRODUCTION, INC. and ANN O'MALLEY,

                        Defendants.
-----------------------------------------------------------------------X

                  09 Civ. 5849 (WHP)(AJP)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SANCTIONS

CARABBA LOCKE LLP
100 William Street
New York, New York 10038
(212) 430-6400

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................................1

STATEMENT OF FACTS....................................................................................1

    Defendants Knew The Potential Opt-Ins Would Read Their Lawyer Letter.................4

ARGUMENT......................................................................................................6

    I.       DEFENDANTS VIOLATED AN ORDER OF THE COURT..........................6

          A. The Court Has a Duty To Regulate Counsel Communications.............6

          B. Defendants Violated A Clear And Unambiguous Order.....................7

          C. Defendants Should Be Held in Contempt..........................................8

    II.      EVEN IF DEFENDANTS HAD NOT VIOLATED A COURT ORDER,
          THEIR CONDUCT IS SANCTIONABLE .................................................10

          A. The Legal Standard for Sanctions...................................................10

          B. Defendants Engaged in Sanctionable Conduct.................................12

CONCLUSION.................................................................................................18

i

## PRELIMINARY STATEMENT

Plaintiff Fredda Malena respectfully submits this request for sanctions against Defendants and their counsel on two grounds.  First, they violated a Court Order by communicating with the potential opt-ins/class members in this Fair Labor Standards Act action/putative class action. Rather than restrict their communications as required by the Order, Defendants devised what appeared to be an ingenious plan to circumvent the Order and make the prohibited communications, while at the same time avoiding detection.  (Although they were successful in making the communications, they were unsuccessful in the "non detection" part of the plan). Second, notwithstanding their violation of the Order, Defendants and their counsel interfered with the potential opt-ins by coercing them not to join the action based on factually incorrect, misleading, and prejudicial information, thereby giving rise to an independent ground for sanctions.

Plaintiff truly regrets having to make this motion.  But because Defendants' conduct was so egregious, underhanded and prejudicial in terms of chilling participation -- as well as because this is not the first time Defendants have violated the rules (they were ordered to pay a portion of my attorney's fees in bringing an application in response to their violation of the Federal Rules of Civil Procedure) -- Plaintiff has no choice but to seek significant judicial relief.

## STATEMENT OF FACTS

The facts underlying this motion are limited and essentially undisputed.  This is an action for unpaid overtime compensation under the FLSA and New York State Labor Law.[1]  For the Court's reference, a copy of the Complaint is attached at Tab A to the accompanying Declaration

---

[1] The Complaint also includes claims related to pregnancy discrimination.  Defendants fired Plaintiff shortly after returning from her pregnancy leave.

of Anthony Carabba, Jr. ("Carabba Decl"). The action was filed as a potential collective action under the FLSA, and a putative class action under the New York State Labor Law, against various entities owned by Limited Brands including Victoria's Secret Direct Media, Inc. and Victoria's Secret Brand Management, Inc. (collectively referred to as "Defendants").

Defendants had employed Plaintiff as an Executive Assistant, responsible for assisting her boss (a manager/executive) with such "secretarial tasks" as filing, answering phones, running personal errands, and calendar management. See Complaint.

The Honorable William H. Pauley III certified this case as a FLSA collective action by Order dated November 16, 2010. A copy of this decision is attached at Tab B to the Carabba Decl. As Plaintiff requested, the Court certified the collective action as to all Executive Assistants employed by each of the named business entities.

The Court's certification decision referenced one outstanding issue, an issue that ultimately gives rise to this application. Because Defendants disapproved of Plaintiff's proposed "Notice of Lawsuit with Opportunity to Join" to be sent to the potential opt-ins, the Court required the parties to meet and confer over the precise language of the proposed Notice. If the parties could agree on the language, they were required to submit a proposed notice to the Court for approval. If the parties could not agree, they were required to submit letter memoranda for the Court to make a determination. See Court's Certification Order at 7-8.

After much negotiation and back-and-forth between the parties, a proposed notice was agreed upon and submitted for approval. At that same time, Defendants asked Plaintiff to consent to sending a separate "Lawyer Letter," from Defendants' General Counsel (Douglas L. Williams), to the potential opt-ins, before they were to receive the official Court notice. According to Defendants, this letter was needed to apprise the potential opt-ins that they would

be receiving the official Court notice.  Because the language of the Lawyer Letter was highly prejudicial, and because such communications between a company's general counsel and the potential opt-ins at that critical stage of the litigation are unduly coercive, and would undoubtedly chill participation, Plaintiff's counsel refused the request.

Defendants then sought Court approval to send the Lawyer Letter.  A copy of their December 6, 2010 application is attached at Tab C to the Carabba Decl.  Plaintiff opposed the request on various related grounds.  A copy of Plaintiff's December 10, 2010 opposition is attached at Tab D to the Carabba Decl.

By Order dated December 19, 2010, Judge Pauley granted the parties request to send the jointly drafted proposed Notice of Lawsuit with Opportunity to Join (the "Notice"), but expressly denied Defendants' request to send the Lawyer Letter, explaining that "[t]he separate Notice that Defendants propose . . . is denied as duplicative."  See Endorsement contained on Defendants' letter application (Carabba Decl., Tab C), hereafter referred to as the "Rejection Order." Defendants never sought Court review, modification or clarification of the Rejection Order.

Undaunted, on January 3, 2011, Defendants' General Counsel sent an email entitled "Fredda Malena v. Victoria's Secret Direct, LLC et al Notice of Lawsuit with Opportunity to Join" to each of the executives to whom the potential opt-ins reported.  A copy of this Lawyer Letter is attached at Tab E to the Carabba Decl.  Defendants sent this Lawyer Letter, which contained much of the same language/information that the Court refused in the Rejection Order, without notice to Plaintiff's counsel, without notice to the Court, and knowing that the potential opt-ins would review it.

*Defendants Knew The Potential Opt-Ins Would Read Their Lawyer Letter*

There is no dispute that Defendants' lawyers (both their team of external lawyers at the Vorys firm, admitted *pro hac vice*, and their General Counsel) sent the Lawyer Letter knowing that the potential opt-ins employed by Defendants would review it.  This is because from the inception of this case, Defendants have asserted that a critical job duty for Defendants' Executive Assistants is to monitor their executive's in-box and review and act upon their executives' emails.   More specifically, in unsuccessfully opposing Plaintiff's certification request, Defendants' counsel submitted over 20 sworn declarations from their Executive Assistants. Virtually every one of the declarations stated that, as part of their job duties, they were required to review and act upon their executive's emails.  See, e.g., Declaration of Deborah Belleau at ¶ 12 ("I also routinely reviewed Mr. Fultz's emails.  I determined which ones were the most important and brought those to his attention."); Declaration of Kendra Clanin at ¶ 13 ("I also review Ms. Greeley's emails;" "I exercise my discretion in deciding which if any emails to flag for her attention or to print out for her review."); Declaration of Brenda Debolt at ¶ 10 ("I am also responsible for reviewing, on an ongoing basis throughout the day, Ms. Turney's emails"; "In order to make such judgments about the various priorities of different emails, I leverage my knowledge of my executive's priorities and of the importance of various issues within the business."); Declaration of Kimberly Garavuso at ¶ 13 ("I also review the emails of the executives I support"; "I also decide, on my own, which emails to respond to on their behalf."). Copies of these declarations are attached at Tab F to the Carabba Decl.

General Counsel Williams admitted this knowledge in his deposition.  When asked to describe the Executive Assistants' job duties, the first item he articulated was reviewing their bosses' emails:

Q:    What was your understanding of what the executive assistants actually did in terms of their job duties?

A:    Well, they had access to an enormous amount of confidential information because they had access to all of the e-mails and correspondence coming in to their executives.  So, they routinely received material non-public information.

Q:    One of their job duties is to review all of the emails that came in?

A:    Most executives have their ... have their executive assistants review their emails.

Q:    That's part of the job responsibilities?

A:    Yes.

Copies of the relevant pages of the Douglas L. Williams deposition transcript, including page 120 referenced above, are attached at Tab G to the Carabba Decl.  Mr. Williams further specifically admitted that he knew at least some of the potential opt-ins would read his Lawyer Letter:

Q:    So there was a document that went from you to the bosses [of] the executives?

A:    Correct.

Q:    Now, you understood, though, that the opt-ins would read that document?

A:    Some would, some wouldn't, yes.

Carabba Decl., Tab G at page 234.  He testified that he disseminated the letter with assistance from outside counsel (the law firm of Vorys, Sater, Seymour and Pease, LLP, located in Columbus, Ohio).  Id. at 237.  Defendants have (at least) three lawyers working on this case from the Vorys firm, all admitted here *pro hac vice*:  Michael G. Long, Allen S. Kinzer and Michael C. Griffaton.  Their efforts to chill participation were successful, as just two of the 44 potential opt-ins actually opted in.

- 5 -

## ARGUMENT

## I.   DEFENDANTS VIOLATED AN ORDER OF THE COURT

### A.   The Court Has A Duty To Regulate Counsel Communications

The United States Supreme Court has recognized that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981).   As explained in Gulf Oil and numerous other decisions, this control is to be applied both before and after the class is certified.   See, e.g., Gortat v. Capala Bros. Inc., 2010 WL 1879922, at *2 (E.D.N.Y May 10, 2010) ("a court, even before certification, may regulate communications by parties and their counsel with putative class members"); Ralph Oldsmobile, Inc. v. General Motors Corp., 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001) (Schwartz, J.) (citing Gulf Oil, 452 U.S. 89) (a court may "restrict communications between parties and potential class members … even before a class is certified.").

The same holds true for collective actions under the FLSA, as they are similar in nature to class actions.   See, e.g., Belt v. EmCare Inc., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003) ("As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and the parties in § 216(b) collective actions.").

The authority to regulate counsel communications in these types of cases allows the court to "discharge … its duty to 'protect both the absent class and the integrity of the judicial process by monitoring the actions before it.'" Kleiner v. First National Bank of Atlanta, 751 F.2d 1193,

1203 (11th Cir. 1985) (quoting Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 331,

100 S.Ct. 1166, 1170, 63 L.Ed.2d 427 (1980)).

### B.    Defendants Violated A Clear And Unambiguous Order

In connection with Court's role in regulating counsel communications, Judge Pauley,

after hearing from the parties and reviewing their arguments, issued his Rejection Order refusing

Defendants' request to send their Lawyer Letter to the potential opt-ins/putative class members.

The Rejection Order is clear and unambiguous. There is no dispute that just a few days later,

Defendants sent a Lawyer Letter anyway, *knowing that the potential opt-ins would read it*.

Further, a simple comparison of the two documents reveals that much of the information

contained in the disseminated Lawyer Letter is the same as the information contained in the

proposed Lawyer Letter rejected by the Court, with many of the paragraphs being identical or

virtually identical. Thus, in disseminating their letter, Defendants violated the Order.

This was not an inadvertent violation. Rather than seek Court approval to send the "new"

Lawyer Letter, or ask the Court to reconsider its ruling, or even notify Plaintiff's counsel of the

renewed attempts at communication, Defendants hatched a plan to achieve their desired result in

a manner designed to avoid detection. Their scheme was creative. By sending the Lawyer Letter

to the executives, their "clients," they believed they could keep it under wraps (by among other

things asserting that the communication was privileged), yet they would achieve the same effect

as the original Lawyer Letter given the Executive Assistants' duty to review their executive's

emails. Now that they have gotten caught, they must be punished. See Kleiner, 751 F.2d at

1203 (holding that sanctions were appropriate where Defendant's "subterfuge and subversion

constituted an intolerable affront to the authority of the district court to police class member

contacts").

### C.   Defendants Should Be Held in Contempt

As Judge Pauley has held, a court "has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and ensure a level playing field for all litigants." Shangold v. Walt Disney Co., 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006). Included in this inherent power is the authority to impose a citation of contempt for violation of a court order. See A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F.Supp.2d 281, 288 (S.D.N.Y. 2000) ("it is axiomatic that 'courts have inherent power to enforce compliance with their lawful orders through civil contempt'") (quoting Shillitani v. United States, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).

"As a fundamental proposition, orders of the court *must be obeyed* until reversed by orderly review or disrobed of authority...." Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1208 (11th Cir. 1985) (quotation omitted). Absolute obedience is expected because "[t]here are few mandates so plain as the command to obey the order of the court." Kleiner, 751 F.2d at 1208. A party's "[d]isobedience of a court order unequivocally merits punishment save in instances in which compliance would necessarily result in an *irrevocable* and permanent surrender of a constitutional right." Id. (quotation omitted). If an order appears to be incorrect, the proper course of action lies in judicial review. Id. When a court issues a ruling, "a lawyer must advise his client to comply and must not counsel disobedience." Id. Finally, "[a]n individual may [not] disregard a court order simply because [it] interfered with ... his exercise of First Amendment rights." Id. (quotation omitted).

In sum, where the order at issue is clear, where proof of noncompliance is clear, and where the party has not diligently attempted in a reasonable manner to comply, the offending party should be held in contempt. See Atlantic Recording Corp. v. BCD Music Group, 2009 WL

1390848, at *7 (S.D.N.Y. May 7, 2009) (Pauley, J.) (issuing contempt sanctions and ordering the disgorgement of profits); Chere Amie, Inc. v. Windstar Apparel, Corp., 175 F.Supp.2d 562, 565 (S.D.N.Y.2001) (Pauley, J.) (issuing contempt sanctions of $25,000 plus attorney's fees).

As Judge Pauley has also held, the conduct at issue need not be willful for a court to impose sanctions for civil contempt. Chere Amie, 175 F.Supp.2d at 567 ("[s]anctions for civil contempt can be imposed without a finding of willfulness") (quoting Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd., 885 F.2d 1, 5 (2d Cir.1989)). See also Atlantic Recording, 2009 WL 1390848, at *7 ("[i]t is not necessary to show that defendants disobeyed the district court's orders willfully"); Gortat v. Capala Bros., 2008 WL 5273960 at *2 (E.D.N.Y., Dec. 18, 2008) ("[a] court may, however, sanction an attorney, even absent a finding of bad faith, for violating a court order"). Of course, a court may "consider whether a contemnor acted willfully in determining an appropriate sanction." Chere Amie, 175 F.Supp.2d at 567.

"Upon a finding of civil contempt, the Court has broad discretion in fashioning the appropriate coercive remedy." Brown v. Colegio de Abogados de Puerto Rico, 2011 WL 497952, at *3 (D. Puerto Rico Feb. 9, 2011) (imposing contempt sanctions for defendants' communication with putative class members in violation of court order).

In determining the appropriate measure of sanctions, courts are mindful that the sanctions serve the dual purpose of coercing future compliance and of remedying past noncompliance. See Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996) (citing United States v. United Mine Workers of America, 330 U.S. 258, 302-04, 67 S.Ct. 677, 700-01, 91 L.Ed. 884 (1947)). More specifically, "sanctions should be calculated to coerce future compliance with the court's orders and to compensate the injured party for losses resulting from the contemptuous conduct." Chere Amie, 175 F.Supp.2d at 567.

Because Defendants' violation of the Rejection Order was plainly willful, because the means they used to violate it were deceitful, and because they never sought any type of review or clarification of the Rejection Order to the extent they believed it was improper, incorrect or unclear, they should be severely punished. As described below, such sanctions should include a significant monetary fine of at least $50,000, disqualification of the Vorys law firm from this action, revocation of their lawyers' admission *pro hac vice* in this action and, as described below, because their Lawyer Letter constituted improper interference/coercion in terms of the potential opt-ins' decision making process on whether to join, we seek an order declaring that the potential opt-ins are deemed to have joined this action as of the date the Notice was sent (thereby treating the opt-in action as an opt-out action).

## II.   EVEN IF DEFENDANTS HAD NOT VIOLATED A COURT ORDER, THEIR CONDUCT IS SANCTIONABLE

Defendants' misconduct in providing false and misleading information to the potential opt-ins and class members warrants the imposition of sanctions even setting aside their violation of the Rejection Order.

### A.   The Legal Standard for Sanctions

The court "bears the responsibility for the supervision of the attorneys appearing before it." Tedesco v. Mishkin, 629 F. Supp.1474, 1485 (S.D.N.Y. 1986). See also Roadway Exp., Inc. v. Piper, 447 U.S. 752, 766 (1980) ("the power of a court over members of its bar is at least as great as its authority over litigants"). "This responsibility carries with it the inherent power to impose monetary sanctions against members of its Bar for misconduct." Tedesco, 629 F.Supp. at 1485 (citing In re Sutter, 543 F.2d 1030, 1035-36 (2d Cir.1976)); Woo v. City of New York,

1996 WL 284930, at *2 (S.D.N.Y. May 29, 1996) (Peck, J.) ("the court has the inherent power to impose sanctions"); Gortat v. Capala Bros., 2008 WL 5273960 at *2 (E.D.N.Y., Dec. 18, 2008) ("[a] court may, however, sanction an attorney, even absent a finding of bad faith, for … misconduct, not taken on a client's behalf, that impedes a court's power to manage a case, its calendar, or its courtroom").

"These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Yurman Studio, Inc. v. Castaneda, 2009 WL 454273 at *2 (S.D.N.Y., Feb. 23, 2009) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (U.S., 1991) (internal quotations omitted)).

A court's power to impose sanctions in response to an employer's improper communications with putative class or collective action members is particularly warranted because "[a] unilateral communications scheme … is rife with potential for coercion. '[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.'" Ralph Oldsmobile, Inc. v. General Motors Corp., 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001). "*Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of facts, without opportunity for rebuttal. The damage from misstatements would be irreparable*." Kleiner, 751 F.2d at 1203 (emphasis added) (finding that the defendant's unauthorized communications to class members "obstructed the district court in the discharge of its duty to 'protect both the absent class and the integrity of the judicial process by monitoring the actions before it'"). Courts have reiterated that in terms of class/collective actions, "it is critical that the class receive accurate and impartial information regarding the status, purposes and effects of the class action." Kleiner, 751 F.2d at 1202. See

also <u>Bublitz v. E.I Dupont De Nemours & Co.</u>, 196 F.R.D. 545, 548-49 (S.D. Iowa 2000) (forbidding employer communication with potential class members about the action, even before class certification, unless communications are first sent to plaintiff's counsel and filed with court, because such communications are one sided without opportunity for rebuttal and because where potential members are at-will employees, "risk of coercion is particularly high; indeed there may be in fact some inherent coercion in such a situation.").

### B.   Defendants Engaged in Sanctionable Conduct.

Defendants' communication with the potential opt-ins is precisely the type of "unsupervised," "unilateral" and "one-sided" communications that courts find impermissible. Even a cursory review of the Lawyer Letter reveals that it is (i) factually incorrect and misleading; (ii) prejudicial; and (iii) intended to coerce and dissuade the potential opt-ins from participating in the action.

First, the Lawyer Letter purports to "explain" the overtime law, but does so in an incorrect and highly prejudicial manner. For example, in the Letter the General Counsel represents to the potential opt-ins that "all of our Executive Assistants are required by their jobs to regularly exercise their discretion and independent judgment sufficient to exempt them from overtime requirements." This is an incorrect and misleading characterization of the law. In order to be exempt, an executive assistant's primary job duty must involve the exercise of discretion and independent judgment on *matters of significance,* as that phrase has been defined in the Department of Labor regulations and as interpreted by the courts. The General Counsel's failure to explain the full story is prejudicial: Of course the potential opt-ins believe they exercise "discretion and independent judgment" in their jobs. Many of them explained in their declarations that they had the "discretion" to delete junk emails from their boss' in-box; or the

"discretion" to order office supplies on a pre-approved list; or the "discretion" to interrupt their boss when someone important was on hold or they received a very important email. See Belleau Declaration at ¶ 12; Clanin Declaration at ¶¶  13, 14; Debolt Declaration at ¶ 10; Garavuso Declaration at ¶ 13. This is a far cry from the type of "discretion on matters of significance" required to eliminate a worker's statutory right to overtime compensation.[2]  Yet with their General Counsel claiming that their job duties *did* involve the sufficient exercise of discretion, why would any of the potential members join?

Next, the Lawyer Letter represents that "[i]n 2005, the United States Department of Labor audited Victoria's Secret Stores-Home Office and determined that the Executive Assistants were properly classified as exempt from the FLSA's overtime pay requirements. In 2006 we analyzed the Executive Assistant positions and again determined which positions should be exempt under the FLSA. The current lawsuit is challenging those two conclusions." These statements are also incorrect and highly prejudicial.

The issue of the internal audit and DOL's so-called audit stems from Defendants' claim that they are insulated from overtime liability under the Portal-to-Portal Act (29 U.S.C. § 259(a)), because they relied on the audits in determining that the Executive Assistants were exempt. (The Portal Act protects employers from liability in certain circumstances if they take action based on an interpretation of the law by a government agency). In fact, Defendants filed a motion for summary judgment seeking dismissal of Plaintiff's overtime claims on Portal Act grounds. The Portal Act, however, provides absolutely no protection to employers in cases like

---

[2] The relevant DOL regulations provide that employees engage in discretion on matters of significance when they, for example, have the authority to negotiate and bind the employer on significant matters or represents the company in handling complaints, arbitrating disputes or resolving grievances 29 CFR § 541.202(b). None of the Executive Assistants here do that. The regulations also provide that the exercise of independent judgment does not include clerical or secretarial work. 29 CFR § 541.202(e).

this.  Suffice it to say, Judge Pauley denied the motion in its entirety.[3]  Defendants' reference to the audits, given that the Court had previously rejected their applicability, is highly improper.[4]

Even if the Court had not rejected the Portal Act defense, Defendants' reference to the two audits is highly prejudicial.  As the Lawyer Letter seeks to portray it, this lawsuit is a collateral attack on the DOL's and General Counsel's audit conclusions.  In other words, they describe this suit as Plaintiff's attempt to "overturn" the audit conclusions.  This is a complete mischaracterization.  The General Counsel's beliefs/conclusions, and the DOL audit, have no impact on this action.  The question is whether, under the law, the individuals at issue are entitled to overtime protection based on the jobs they do.  The jury will make that determination based on their determination of facts.  They owe zero deference to Defendants' General Counsel and his audit, as well as the DOL's audit, are probative of nothing.[5]

Finally, the Lawyer Letter was sent to chill and dissuade the potential opt-ins.  Perhaps the clearest way to discern Defendants' intent here is to question why they sent the letter in the first place.  The Lawyer Letter itself suggests that Defendants purportedly sought to prepare their executives for a response to the potential opt-in who receives the Notice and asks them "what should I do?"  (As if an assistant would ever ask their boss, in effect, "should I sue the company"?).  Defendants may also claim that they sought to reiterate that no executive may retaliate against an employee for joining.  Had they sought to accomplish those goals, they

---

[3] See Carabba Decl. at Tab B.  The Court found that the DOL audit was "limited in scope" and only considered the classification of a single executive assistant who worked for a single Victoria's Secret entity.  The Court also rejected the idea that Defendants' internal audit protected them from liability, because the "Portal Act is not intended to make each employer his own judge of whether or not he has been guilty of a violation."  Decision at 5 (quotation omitted).

[4] Making matters worse, Defendants told the potential opt ins that the Court has "not made any determination as to whether either party is correct."  Given that the Court had rejected the Portal Act defense, their statement is untrue.

[5] Plaintiff explained at length why the so-called audits are irrelevant to any issue in the case in her successful opposition to Defendants' motion for summary judgment.

should have asked the Court to modify the Order. In reality, we know from the overall content of the Lawyer Letter that its intent was to dissuade/coerce. Why else would Defendants include information about the "law" and the audits? The executives, as a matter of common sense, did not need to know about the legal standards applicable to this case or the prior audits. If the true concern was to prohibit retaliation, Defendants could have written that and nothing else.

We also know the intent was to dissuade and intimidate by the manner in which the information was conveyed. If Defendants legitimately sought to convey information to the executives only, they could have held an in-person or telephonic or video conference, *outside of the opt-ins presence*. Or they could have sent an interoffice memo in a sealed envelope marked "Confidential/For [executive's] Eyes Only." Or they could have sent a password protected email. Other options were obvious, plentiful and easy to implement; they chose none of them.

* * * * *

Defendants' conduct here is very similar to the lawyer's conduct in <u>Belt v. EmCare Inc.</u>, 299 F. Supp. 2d 664 (E.D. Tex. 2003). In that FLSA case, the court issued severe sanctions against the employer's counsel for sending an unapproved letter to the potential opt-ins "just before the Court's sanctioned notice was to be sent. <u>Id</u>. at 666. The court held that "sending the letter with no notice to Plaintiff or the Court, the day before EmCare was to provide Plaintiff with the potential class members' mailing address for the Court-approved notice, persuades the Court the EmCare intended to ***subvert the Court's carefully crafted notice and its role in administering the collective action***." <u>Id</u>. at 669. (emphasis added).

The court found that the lawyer letter was "misleading" in various ways, including by mischaracterizing the damages available to the plaintiff by "ignoring statutory liquidated damages" and by mischaracterizing the Department of Labor's position on the claims at issue

(Defendants did both of those things here).  The court had no trouble in concluding that the lawyer letter was coercive because "[a]s a letter sent from an employer to its employees, any statements in EmCare's letter have heightened potential for coercion" given that ongoing employer/employee relationship.  Id. at 668.  The court noted that the defendants' conduct was "more egregious" in a collective action than a class action, because the potential members must opt in.  Id. at 669.

        In addition, the court specifically rejected the employer's claim that the letter was not coercive because it contained certain "anti-retaliation" language.  The court found such language wholly insufficient to eliminate the fear of retaliation created by the letter's "overall tone" and given that the parties had an "employer-employee relationship."  Id. at 668, n.8.  Finally, the court found that the letter was "intended to undermine the purposes of the collective action" by encouraging the potential opt-ins not to join.  The court reasoned that the letter "could have no purpose ***but to discourage*** absent class members from joining suit" a fact made more plain by the employer's admission that counsel helped draft the letter.[6]  Id. at 669.

        The Belt court ultimately issued a wide variety of sanctions against the employer's counsel.  It required a detailed corrective notice be sent to all of the potential opt-ins, at the employer's cost; it reopened the opt-in period so that the potential opt-ins had additional time to join after receiving the corrective notice; and awarded plaintiff all costs and attorney's fees in bringing the sanctions motion.  In addition, and perhaps most significantly, the court reserved the possibility that it would "***allow putative class members to opt into the class post verdict***."  Id. at 669-70 (emphasis added).  Other courts have ordered similar sanctions.  See Gortat, 2010 WL 1879922 at, * 3-4 (surveying cases and explaining that sanctions for improper communications

---

[6] The court also noted that counsel's conduct potentially violated the Standards of Practice for the Eastern District of Texas.

in collective and class actions have included disqualification of defense counsel; significant monetary fines ($50,000); judicial invalidation of opt-out forms submitted; and ordering new notice and opt-in periods);  Kleiner, 751 F.2d at 1199 (ordering, among other things, $58,577 in fines and disqualification of counsel for improper communications).

Given the foregoing, Plaintiff respectfully requests a Report and Recommendation finding Defendants and their counsel in contempt; imposing a significant monetary sanction of no less than $50,000 payable to the clerk of the court; disqualifying from this action the three lawyers of record from the Vorys law firm[7]; rescinding the order granting them *pro hac vice* admission; and awarding Plaintiff her attorney's fees and costs in making this motion.  Because Defendants' interference and coercion are irreparable, and because it is impossible retract the Lawyer Letter, we also ask the Court for an order declaring that the potential opt-ins are deemed to have opted-in to this action as of the date the Notice was sent (thereby treating the opt-in action as an opt-out action).

In the alternative, in the event the Court is unwilling to make the FLSA action an opt-out case, we request that the Court order that a proper corrective notice be sent by Defendants to the potential opt-ins (at their cost) and that the opt-in window be extended for a reasonable period of time.  In addition, we request that the Court issue an order permitting the potential collective members to opt-in to the action post verdict, as set forth in Belt, *supra*.[8]

---

[7] Defendants already have other (local) counsel in this matter (Stephen F. Harmon of Troutman Sanders LLP), so this will not a hardship.

[8] The corrective notice concept does little to remedy the situation.  As the Court of Appeals referenced in Kliener, lawyers/clients who "seize upon the idea" of "reducing potential liability" by making unsupervised contact with the potential class, may "canvass[] the potential benefits and costs" in doing so.  A corrective notice could be seen by the client as a "relatively innocuous remedy under the circumstances."  751 F.2d at 1197.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue a Report and Recommendation imposing sanctions against Defendants and their counsel as described herein, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
     July 1, 2011

                    Respectfully submitted,

                    CARABBA LOCKE LLP

By: _____
             Anthony Carabba, Jr. (AC 1487)
             100 William Street
             New York, New York 10038
             (212) 430-6400

             *Attorneys for Plaintiff*